**UNITED STATES of America, Plaintiff,**

v.

**OREGON ELECTRIC RAILWAY COMPANY, a corporation, Defendant.**
**Civ. No. 60–213.**

United States District Court
D. Oregon.
June 22, 1961.

---

3. Article 2, Section III.

David Robinson, Jr., Asst. U. S. Atty., Portland, Or., for plaintiff.

Hugh L. Biggs and Cleveland C. Cory, Hart, Rockwood, Davies, Biggs & Strayer, Portland, Or., for defendant.

EAST, District Judge.

In this action the United States of America, lending its capacity on behalf of the Bonneville Power Administrator (Bonneville), seeks to recover the amount of money expended by Bonneville in changing the location of electrical transmission poles and conductors and otherwise modifying its transmission electrical line facilities maintained by virtue of the hereinafter mentioned decree of condemnation along and within the right-of-way ownership of Oregon Electric Railway Company, a corporation (Railway).

This Court has jurisdiction under the provisions of Title 28 U.S.C.A. § 1345.

It appears from the evidence that during the years 1953 and 1954, Railway constructed certain new railroad sidings, which have been agreed by the parties to be necessary changes and additions made to Railway's trackage because of industrial development and for other valid reasons in the normal operation of Railway's railroad. Relocation of Bonneville's poles and lines was made necessary by reason of the hazards created by the changes and additions to Railway's trackage. Bonneville changed the location of

the transmission lines, it being understood that such conduct would not be deemed an admission of liability for the costs incurred, and that it should be done without prejudice to Bonneville's assertion of the claim herein made.

■ To determine which of the parties is obligated to bear the expense of the relocation, it is necessary to ascertain the nature of Bonneville's right to maintain the poles and lines upon Railway's property. This right, insofar as the geographical area involved in this action is concerned, was acquired in a condemnation action in this Court, referred to as "Civil No. 53." The judgment on the declaration of taking in that action was entered December 29, 1938, and provided

"That title to a perpetual easement for the construction, operation, and maintenance of two electric power transmission lines over and along the [Railway's] real property * * * be vested in the United States of America, subject to existing public roads, public utility easements and rights of way."

Thus, Bonneville acquired a general easement to maintain two electric power transmission lines. It is well-settled that where the condemnor acquires an easement, the right of the owner of the servient estate to use the fee is subject to a duty on his part not to interfere with the full and free use of the easement. 3 Nichols on Eminent Domain §§ 9.2[2] and 9.22 (3rd Ed.). If this general proposition were to be deemed controlling in this case, then the expense of relocating the transmission facilities would fall upon Railway. Railway contends that the general rule is inapplicable for two reasons:

1) A written Right-of-Way Agreement [1] executed by the parties in 1938

[1] "Right-of-Way Agreement
Between
The United States of America
Represented by the Bonneville Project
Department of the Interior
by J. D. Ross, Administrator
and
Oregon Electric Railway Company.

"Memorandum of Agreement made this 27th day of December, 1938, between the United States of America, represented by the Bonneville Project, Department of the Interior, by J. D. Ross, Administrator, as first party, and Oregon Electric Railway Company, a corporation, herein referred to as the 'Railway Company,' as second party: * * *

"This memorandum of agreement is made for the purpose of stating the terms and conditions of the right or easement to be acquired by the United States for said transmission lines, and the procedure to be followed in order to vest such right in the United States.

"The parties hereto mutually agree as follows:

"1. Upon execution of this agreement, the United States will institute a condemnation proceeding against the Railway Company and Irving Trust Company as trustee of the Railway Company's mortgage or deed of trust, to acquire an easement covering 65.058 miles of the total of 74.72 miles hereinabove referred to, being that part to which the Railway Company has full title excepting for its mortgage above referred to; and the United States shall thereupon deposit in court the sum of $104,092.80, which the parties agree shall be the consideration to be paid for the easement applicable to said 65.058 miles of railroad right of way.

"Thereafter, upon satisfactory proof of title in the Railway Company subject to said mortgage, and upon the filing of a stipulation by both defendants providing for the entry of a decree vesting in the United States an easement for right of way for its transmission lines subject to the limitations hereinafter in this agreement stated, the United States shall consent to the payment to the Railway Company and Irving Trust Company as trustee, jointly, of the moneys so deposited in court. * * *

"3. The stipulations to be filed in said two condemnation suits as hereinabove provided for, and the decrees to be entered thereon, shall provide for the vesting in the United States of an easement for a right of way for the construction, maintenance, and operation of two 115,-000-volt transmission lines along and upon the portions of the Railway Company's railroad right of way hereinabove described, subject to the following conditions and limitations:

"(a) Said transmission lines shall be constructed in accordance with recognized

expressly provided that Bonneville would make necessary changes in the location of its poles, at its own expense.

2) Under basic principles of easement and condemnation law, the easement acquired by the United States should be construed as being burdened with a continuing obligation on Bonneville to move its transmission lines, if this became necessary to avoid interference with the normal operation of Railway's railroad. As to Railway's first contention, it is Bonneville's position that the Bonneville Power Administrator was without authority to execute the agreement on behalf of the United States and that, in any event, the agreement was only to file stipulations in the condemnation action and did not itself purport to limit the easement acquired.

 If decision in this case depended solely upon a finding as to whether the Bonneville Administrator had the authority to bind the United States to the Right-of-Way Agreement, this Court would be constrained to hold that the Administrator did have such authority. However, the fact remains that the agreement called for the filing of stipulations concerning its terms by the defendants in the condemnation action. No stipulations were filed, and the conditions and limitations contained in the agreement were not set forth in the declaration of taking or judgment in the condemnation case. Therefore, the agreement does not, in and of itself, have the effect of limiting the easement acquired by the United States.

 However, Railway's second contention possesses merit. The critical question in this case relates to the location of the transmission lines. Where, as here, the easement is general, its location must be established by documents or acts aliunde the granting instrument. This is essential to defining the easement acquired. The general rule of law is stated in 28 C.J.S. Easements § 82:

"Where an easement in land, such as a way, is granted in general terms, without giving definite location and description of it, the location may be subsequently fixed by an express agreement of the parties, or by an implied agreement arising out of the use of a particular way by the grantee and acquiescence on the part of the grantor, provided the way is located within the boundaries of the land over which the right is granted. As otherwise expressed, it is a familiar rule that, when a right of way is granted without defined limits, the practical location and use of such way by the grantee under his deed acquiesced in for a long time by the grantor will operate

standards of design and dimensions for 115,000-volt, 3-phase, 60-cycle transmission lines construction. The two lines shall be located one on each side of the railway track of the Railway Company at such distance (but not less than sixteen feet) from the railroad center line as will provide the maximum of clearance practicable, and the transmission lines generally to be constructed, maintained, and operated without interference with the buildings and improvements of the Railway Company used in the operation of its railroad.

"(b) Said transmission lines shall be constructed and at all times maintained and operated in conformity with the laws of the State of Oregon and in accordance with any and all standards and regulations adopted pursuant thereto, and in accordance with the applicable provisions of the National Bureau of Standards Safety Code; and shall be installed and operated at all times in the manner most effective in minimizing interference with the Railway Company's telephone signal system and transmission lines.

"(c) Said transmission lines shall be constructed and at all times maintained and operated in conformity with all state and federal requirements for lateral and vertical clearances pertaining to the operation and use of all trackage of the Railway Company; and in the event of changes in or additions to such trackage because of industrial development or for other reasons in the normal operation of the Railway Company's railroad, the United States shall, at its own expense, make such changes in the location of any pole or poles as shall be necessary to conform to such changes in trackage. * * * "

to fix the location. The location thus determined will have the same legal effect as though it had been fully described by the terms of the grant. * * * [T]his rule * * * is a rule of practical construction adopted to ascertain the intent of the parties * * * ."

A case in several respects similar to the case at bar is Youngstown Steel Products Co. of California v. City of Los Angeles, 1952, 38 Cal.2d 407, 240 P.2d 977, 979. The plaintiff had granted to the city a right of way across plaintiff's land for electric power lines, but the grant did not specify the location or height of the wires. For a period of 17 years the lines were maintained at a height of 51½ feet above the ground, without objection by the plaintiff. Plaintiff's property was used as a storage yard for pipe. At the end of the 17-year period, in order to store pipe at a greater elevation, plaintiff acquired a new crane which could reach to a height of 61 feet. The use of the new crane was incompatible with maintenance of the wires at their former level. The issue to be decided by the court was who should bear the cost of moving the wires, since this had been accomplished before trial by agreement of the parties. It was held that, by reason of the plaintiff's acquiescence in the exercise of the right of way at a level of 51½ feet for 17 years, the expense of raising the wires should be borne by plaintiff. In arriving at its decision, the court stated as follows:

"Where the right of way has been used at a particular location with the acquiescence of the servient owner, the parties have, in effect, placed their own practical construction upon the grant, and the easement will be regarded as fixed at that place. [Citations omitted.] Once the location of an easement has been finally established, whether by express terms of the grant or by use and acquiescence, it cannot be substantially changed without the consent of both parties. [Citations omitted.] And the grantor has no right either to hinder the grantee in his use of the way or to compel him to accept another location, even though a new location may be just as convenient."

Another case on this subject is United States v. Felix O'Neill, Inc., D.C.E.D.Pa. 1956, 144 F.Supp. 292, 293. In that case the government acquired, by condemnation, a general right of way, and thereafter used a particular route for a long period of time. The landowner erected a barricade across the road, and the government brought suit to enjoin the interference with its use of the way. In deciding that the injunction should issue, the court stated that

"The legal question involves a determination of the intent of the parties when defendants' predecessor in title conveyed the right of way in question in general terms without setting forth its location. *This intent can be best ascertained by examining all the documents and circumstances surrounding the transfer of title.* Where there is no express agreement with respect to the location of a right of way which has been granted but not located, the practicable location and user of a reasonable way by the grantee, acquiesced in by the owner of the servient estate, sufficiently locates the way." [Emphasis supplied.]

The foregoing authorities are cited only because of their necessary implications. Unlike the facts in the Youngstown case, in the case at bar the location of the easement was never "finally established." There was no "acquiescence" in a permanent, fixed location of the wires.

█ It is recognized to be beyond dispute that the location of a general easement normally is fixed by law in accordance with its initial physical location. But this rule is no more than a tool designed to accomplish, and establish objectively, the intent of the grantor and grantee. Where there is a more reliable method of determining the practical construction placed upon the grant by the

parties, it should not be forsaken. Even if the so-called "Right-of-Way Agreement" is not deemed to be binding upon the United States as a contract, the express terms of which are controlling, still the history of the negotiations which preceded execution of the agreement and which finally resulted in the unopposed condemnation, is helpful and competent for the purpose of determining the intent of the parties as to the location (and possible future relocation) of the easement for the transmission lines. The fact that the Right-of-Way Agreement did not by its own force bind the United States to bear the expense of relocating the utility poles, does not mean that the Bonneville Power Administrator's intention is to be ignored by this Court as it attempts to specify the general easement taken in 1938. In fixing location of the poles and lines, whose intent would be relevant insofar as the United States is concerned? Unquestionably, it is that of the representatives of the Bonneville Power Administration. It is very unlikely that anyone else connected with the United States Government had any intention in this regard. It is the Bonneville Administrator's signature which appears on the declaration of taking. It was the Bonneville Power Administration which was to benefit from the condemnation, to locate the poles and lines, and to use them in its operation.

All that the United States acquired in the condemnation action was a general easement for transmission lines. Neither the height nor horizontal location of the lines, nor the location of the poles were specified. There was no unconditional acquiescence in the location of the lines. All the evidence sustains the proposition that Railway's acquiescence, re location of the lines, was conditional; i. e., it was conditioned upon the lack of any necessity for moving the lines due to reasonable changes and additions to Railway's trackage. Furthermore, the evidence is clear that this intent concerning the location of the easement was shared by the representatives of Bonneville. The negotiations leading to the Right-of-Way Agreement show that there was never any disavowal of Bonneville's willingness to bear the expense of avoiding interference with normal alterations in Railway's trackage. Both the Department of Justice and the United States Attorney had knowledge that Bonneville and Railway were negotiating the terms of the easement, and delayed filing the condemnation action because of those negotiations. The just compensation consented to by Railway in the condemnation action corresponded exactly to the amount specified in the Right-of-Way Agreement, which also contained the limitation concerning relocation of the easement. Also, Bonneville representatives have, on other occasions subsequent to the acquisition of the easement, recognized their obligation and willingness to move the facilities at Bonneville's expense. In conclusion, the evidence undeniably discloses that the intention of the parties relative to the location of the easement was, at all times material, that there would be no permanent, fixed location. Instead, the location of the transmission lines was to be alterable in the event that such change became necessary because of reasonable modification of Railway's trackage due to normal development and operation of the railroad. Therefore, the expense of the relocation must be borne by Bonneville, and Railway is entitled to judgment in its favor.

Counsel for Railway is requested to submit findings of fact and conclusions of law and judgment in conformity with the foregoing opinion.