Argued and submitted December 13, 1990, reversed and remanded in part; otherwise affirmed July 24, reconsideration denied December 16, 1991, petition for review denied January 21, 1992 (312 Or 589)

Paulena Elizabeth Carter VERZEANO,
*Respondent,*

*v.*

Fred E. CARPENTER
and Hazel M. Carpenter,
*Appellants.*

(88-3358-L-2; CA A63060)

815 P2d 1275

Mildred J. Carmack, Portland, argued the cause for appellants. On the appellant's brief was Walter D. Nunley, Medford. On the reply brief were Mildred J. Carmack and Schwabe, Williamson & Wyatt, Portland.

W. V. Deatherage, Medford, argued the cause for respondent. With him on the brief were Stephen G. Jamieson and Frohnmayer, Deatherage, Pratt, Jamieson & Turner, P.C., Medford.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Plaintiff brought this declaratory judgment action seeking declarations that she has an easement allowing ingress and egress across defendants' property and that a public easement exists across defendants' property. Plaintiff also seeks to enjoin defendants from interfering with the use of the easements by plaintiff and the public. The trial court granted the relief sought.

In 1947, defendants purchased lot 500 from plaintiff's predecessor in interest, Phillips. It is adjacent to the Southern Pacific railroad and Old Pacific Highway (also called Talent Avenue and Old Highway 99). Phillips' son-in-law drafted the deed conveying lot 500 to defendants. He recorded it in 1949 and delivered it to defendants two months later. Apparently, defendants did not read it until 1960. The deed reserved an easement across defendants' land:

> "[A] strip of land 30 feet wide along the southerly line of the above described tract is reserved for road purposes for access & egress to and from lands belonging to the grantor."

Phillips died three months after the deed was delivered. Four parcels of land in the immediate area, lots 400, 1600, 1800 and a 30-foot strip of lot 300, were distributed under her will. There were no residences or other occupied buildings on Phillips' properties. Plaintiff now owns all of the property owned by Phillips at the time of her death, as well as lots 200 and 300.

Maps A and B, which are attached as appendices, will assist in an understanding of the facts. As shown in Map A, lots 400 and 500 are contiguous but lots 200 and 300 separate them from lots 1600 and 1800. The 30-foot strip of lot 300 abuts lot 400 but does not terminate at either lot 1600 or lot 1800. To reach lots 1600 or 1800 from lot 400, it is necessary to cross land that Phillips did not own at the time of the conveyance. A private ditch road runs along the west side of lot 300, becoming a trail as it approaches lot 1600.

A county road, known as the Oregon-California Stage Road, was established in the area in 1867. It ran adjacent to the railroad tracks, crossing them from the north just east of lot 400 and crossing back at the west boundary of lot 500. Map A shows a portion of the 1867 road that crossed

defendants' property. Except for a short access strip, shown in Map B, defendants' driveway roughly follows the same route as the 1867 road and the easement.

During the 1920's, Old Pacific Highway was constructed immediately north of the railroad tracks, parallel to or overlapping the 1867 road. Although the 1867 road was never formally vacated, the county stopped maintenance and abandoned it and the old railroad crossings as soon as Old Pacific Highway was constructed. Except for defendants' driveway, there is little evidence of the 1867 road today. After Old Pacific Highway opened, an occasional car still drove across the remnants of the old road. Plaintiff went over it a few times as a child in the 1930's and 1940's for picnics and to visit a mercury mine on the south end of lot 1600. In recent years, persons crossing lot 500 have used defendants' driveway and then passed through a locked gate to enter lot 400. Several people testified that they had used the driveway. Some testified that they had plaintiff's express permission or had an easement. Others testified that they had assumed that it was public.

Defendants assign error to the trial court's holding that the easement reserved in their deed was appurtenant to lots 400, 1600, 1800 and to a 30-foot strip of lot 300. They argue that only an easement in gross, not an easement appurtenant, was reserved in the 1949 conveyance. In the alternative, they contend that, if an easement appurtenant was created, it is only appurtenant to lot 400.

The language reserving the easement provides that it is for access to "lands belonging to the grantor." There is a strong preference for finding that an easement is appurtenant, especially where the deed specifically refers to property that could be the dominant estate. *Hall v. Meyer,* 270 Or 335, 527 P2d 722 (1974); Powell, *Real Property* 34-22, ¶ 405 (1989). Although the property is not precisely defined, it is clear from the language of the conveyance that the "lands belonging to grantor" were intended to be the dominant estate, and we conclude that the easement is appurtenant.

The critical question here is what lands are included within the dominant estate. When property described in a conveyance is ascertainable by examining extrinsic evidence,

it is appropriate to consider such evidence. Powell, *Real Property* 81A-93, ¶ 899[1] (1989). The focus of the inquiry should be on the circumstances and the parties' intent at the time of the conveyance. *Tusi v. Jacobson,* 134 Or 505, 293 P 587, 293 P 939 (1930); Thompson, *Real Property* § 3022 (1962).

■      After reviewing the evidence of the circumstances at the time of the conveyance, there is no question but that "lands belonging to the grantor" includes lot 400. It is adjacent to defendants' property and the easement provides direct access to it. Phillips owned lot 400 at the time of the conveyance and her ownership was recorded. The parties must have intended that it be part of the dominant estate.

■      The more difficult question is whether the easement is appurtenant to lots 1600 and 1800. Defendants concede that Phillips owned lots 1600 and 1800 at the time of the conveyance. However, those lots were separated from lots 400 and 500 by lands owned at that time by other members of the Phillips family. There is a conflict of authority whether an easement of way may be appurtenant to land when the servient tenement is not adjacent to the dominant estate. Some cases hold that there can be no easement of way unless it is contiguous to the dominant tenement. Powell, *Real Property* 34-193, ¶ 415[2]. However, we agree with the majority view that an easement may be appurtenant to noncontiguous property if both tenements are clearly defined and it was the parties' intent that it be appurtenant. Thompson, *Real Property* § 322 (1980).

The terms "lands belonging to grantor" do not clearly define the dominant estate. Although it may be inferred from the use of the word "lands" that it includes more than one parcel of property, it is unclear what is included in that description. There is little evidence of what the parties to the reservation of the easement intended to include in the dominant estate. Apparently, the parties never discussed the easement at the time that it was created. Although the road across defendants' property was used occasionally for access to lots 1600 and 1800, it is unclear whether defendants knew that Phillips owned that property. Neither lot had been recorded in plaintiff's name.

When there is an ambiguity in a deed, the general rule is to construe it against the grantor. Thompson, *Real Property* § 3023 (1981). Because we are dealing with a reservation of an easement, defendants as owners of the servient estate are the grantors. There are, however, exceptions to the general rule of construing language against the grantor. When language in the reservation of an easement is construed, such as here, the general rule does not apply, because the reservation is drafted by the grantee:

> "In case of doubt the *grant of an easement* is construed, as are conveyances generally, in favor of the grantee rather than the grantor, while a *reservation of an easement* is, it seems, to be construed in favor of the grantee of the land. In such a case a right of way reserved over the granted premises is limited to that expressly reserved." Tiffany, *Law of Real Property* § 802 (1931) (emphasis supplied); *see also* Powell, *Real Property* 34-186, ¶ 415(2) (1989).

We conclude that "lands belonging to grantor" includes lot 400 but does not include either lot 1600 or lot 1800.

Plaintiff also argues that the easement is appurtenant to a 30-foot strip abutting lot 400 and running south along the edge of lot 300 that Phillips allegedly owned in 1949. Plaintiff contends that defendants stipulated that Phillips owned that strip in 1949. However, the record shows that defendants stipulated that plaintiff now owns the strip, as well as all of lots 200 and 300, but it does not clearly show that they stipulated that Phillips owned the 30-foot strip in 1949. The only evidence in the record that might establish that is that it was distributed under Phillips' will. However, she died after the 1949 conveyance, and there is no evidence of when she acquired it. Thus, we hold that the easement is not appurtenant to the 30-foot strip on the edge of lot 300.

Defendants argue that use of the easement should be limited to agricultural purposes, because that was the only use reasonably foreseeable at the time of the conveyance. However, when an easement is granted by a written instrument and is written in general terms without limitations, unlimited reasonable use is allowed. As explained in *Long v. Sendlebach,* 56 Or App 158, 162, 641 P2d 1136 (1982):

> "The majority rule is that an easement granted or reserved by a written instrument in general terms, without

any limitations as to its use, is one of unlimited reasonable use. It is not restricted to use merely for such purposes of the dominant estate as are reasonably required at the time of the grant or reservation, but the right may be exercised by the dominant owner for any reasonable purpose to which that estate may subsequently be used. Therefore, there may be an increase in the volume and kind of use of such an easement during the course of its enjoyment."

We conclude that unlimited reasonable use of the easement is permissible.

■      A question remains concerning a short section of defendants' driveway, not included in the easement, designated "access strip" on Map B, that must be traveled to get from the public road to the easement. It runs south from the road, across the railroad tracks and then across a short strip of lot 500 before it reaches the expressly reserved 30-foot-strip along the south boundary of the lot. Defendants contend that the access strip may only be used with their permission. We conclude, however, that there is clear and convincing evidence that plaintiff has an easement on that strip by implication. *See Thompson v. Schuh,* 286 Or 201, 593 P2d 1138 (1979); *Smo v. Black,* 93 Or App 234, 761 P2d 1339 (1988). It is clear that the easement reserved in the deed for ingress and egress was intended to include the short access strip that connected the road and railroad crossing to the express reservation. The access strip has been used as part of the driveway both before and after the easement was reserved.

■      Defendants also assign error to the trial court's decision that the 1867 road still exists on lot 500. They agree that the old road did cross their property. However, they contend that the county either replaced and thereby vacated the road or that it was lost by common law abandonment. A public road cannot cease to exist on the basis of common law abandonment:

"Although [a] road has been in disuse for several years, this court has held that an existing road can cease to exist only under statutory provisions governing the procedure for vacation and discontinuance of public roads or highways. *Martin v. Klamath County,* 39 Or App 455, 592 P2d 1037 [*rev den* 287 Or 45] (1979). A duly-established public road may not be lost to the public except pursuant to statute." *Wilkins v.*

*Lane County,* 65 Or App 494, 671 P2d 1178, *rev den* 296 Or 253 (1983).

The remaining question is whether the county vacated the road on defendants' property when it built the Old Pacific Highway. The statute in effect at that time provided:

"Whenever any proceeding is instituted in any county court of this state, by petition or resolution or otherwise as may be provided by law, having for its object the relocation or alteration of any existing county road or highway within said county and said proceedings are carried to a conclusion and a final order entered therein establishing a new road following the general alignment of the old road, *said final order shall be effective to vacate all parts of the old road or highway not included within the limits of the new road, without any other proceedings;* provided, however, the county court may expressly provide that any portion of the old road shall not be so vacated. But whenever the whole or any part of a road so vacated shall be supplied by another the same shall not be shut up or obstructed, until the road laid out to supply the place thereof shall be actually opened to travel." 2 Oregon Laws § 4555 (Olson 1920). (Emphasis supplied.)

Although the new road did diverge from the 1867 road, at one point by as much as 257 feet, it did follow the general alignment of the old road, and there is evidence that it was intended to replace the old road. In 1925, the county court issued a resolution and notice of its intention to "locate, establish, alter, widen, straighten and change" the Pacific Highway between Medford and Ashland. *Establishing the Right of Way of and Widening [of] the Pacific Highway,* Jackson County Surveyor's Record (April 15, 1926).[1] In 1919 and in 1928, the Public Service Commission issued orders to abandon the railroad crossings that linked Old Pacific Highway with the segment of the 1867 road that ran south of the railroad tracks. The orders required that one new crossing be constructed 115 feet east of the old west crossing, as shown in Map B. The new crossing did not connect with the 1867 road; there was a short, unencumbered section of lot 500 between the crossing and the old road. Immediately after the opening of the new highway, the county ended all maintenance of the

---

[1] Although this public record was not before the trial court, we will take judicial notice of it under OEC 201(d), OEC 201(f) and OEC 202(7).

old road and the new railroad crossing. There is conflicting evidence on whether the railroad company considered the new crossing public. However, for at least 40 years, it has posted "private property, permissive use" signs at the crossing.

Plaintiff's surveyor testified that the highway was constructed along the 1867 road but that they diverged into two roads at the railroad crossing at lot 500. Other witnesses testified that the 1867 road had been replaced when the highway was built in the late 1920's. According to the Public Works Director for Jackson County, the road across defendants' property has not existed on the ground for over 40 years. He testified that the road had never been vacated:

"Q. Can you tell the Court why it was not vacated but only abandoned?

"A. I can only surmise that we have a number of situations that occurred over the years that follow through, was not performed as it is, as it is now. The road simply was not vacated. Nobody felt it was important or would be important to vacate it, I presume.

"Q. Now, was it vacated as a result of the establishment of the present road called Talent Avenue?

"A. Sorry, it was, sir, it was not vacated.

"Q. I mean was it abandoned. I'm sorry. Was it ceased to be used?

"A. That's correct.

"Q. For maintenance purposes when the other highway was put in?

"A. That's correct, as far as we know that roadway was created in 1987 [sic] but it was relocated the part of Talent Avenue in 1926, and —

"Q. That's just a matter of what 60, 70 feet or so across the railroad tracks from the old road, right?

"A. Plus or minus."

Plaintiff contends that, because the county never formally vacated the portion of the 1867 road that crossed lot 500, she has the right to reestablish and use it. The present statute, ORS 368.620, requires a county to follow specific procedures in vacating a county road. Under that statute, when a new public road following the general alignment of an

existing public road is built, the final order must state the sections of the old road that are to be vacated. However, under the statute in effect at the time Old Pacific Highway was built, the final order establishing it was effective, without any other proceedings, to vacate all parts of the old road on lot 500 not included within the limits of the new highway. 2 Oregon Laws § 4555 (Olson 1920).

Reversed and remanded with instructions to enter a modified judgment deleting lots 1600, 1800 and the 30-foot strip along lot 300 from the property to which the easement is appurtenant and declaring that a county road does not exist across lot 500; otherwise affirmed.