Argued and submitted January 14, 1997; resubmitted July 27, decision of Court of Appeals and judgment of circuit court affirmed in part and modified in part, and case remanded to circuit court for further proceedings October 2, reconsideration denied November 24, 1998

Mark TIPPERMAN,
dba McCoy Meadows Ranch,
*Petitioner on Review,*

*v.*

William TSIATSOS,
*Respondent on Review,*

*and*

STATE OF OREGON,
by the Department of Fish and Wildlife,
*Respondent.*

(CC 93-12-35919; CA A86086; SC S43269)

964 P2d 1015

Mark Tipperman, La Grande, argued the cause and filed the briefs *in propria persona* for petitioner on review.

Steven J. Joseph, La Grande, argued the cause and filed the brief for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, and Leeson, Justices.**

CARSON, C. J.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision; Graber, J., resigned March 31, 1998, and did not participate in this decision; Kulongoski, J., did not participate in the consideration or decision of this case.

## CARSON, C. J.

In this action for a declaratory judgment and an injunction against defendant Tsiatsos (defendant),[1] plaintiff asks this court to modify the trial court's judgment, which construed a deed that reserved an easement favorably for defendant. The Court of Appeals affirmed the trial court's judgment, with one minor modification. *Tipperman v. Tsiatsos*, 140 Or App 282, 915 P2d 446 (1996). The issues before us concern the proper methodology for construing a deed that reserves an easement and the application of that methodology to the deed at issue in this case. For the reasons that follow, we affirm in part and modify in part the decision of the Court of Appeals.

The Court of Appeals reviewed the trial court's judgment *de novo*, pursuant to *former* ORS 19.125(3) (1995), *renumbered as* ORS 19.415(3) (1997). We accept the facts as found by the Court of Appeals and limit our review to questions of law. ORS 19.415(4). We take the following facts from the Court of Appeals' decision and from other undisputed facts contained in the record.

In 1909, Jeff and Jennie Ayres, defendant's predecessors in interest and the original grantors, conveyed land located in Union County to The Grande Ronde Reservoir Company, plaintiff's predecessor in interest. The deed conveying the land (the Ayres deed) contained the following reservation of an easement:

> "Reserving, however, out of the said last described tract of land [175 acres], * * * the right to use the waters of Meadow Creek flowing through the same, for stock water for stock of the grantors and their assigns pasturing on adjacent lands and the right of free access for said stock to said waters over said lands."

There is no evidence in the record that demonstrates how the burdened land was used at the time when the Ayres deed was executed. Nor is there any evidence that demonstrates how the Ayreses used the easement after executing the deed.

---

[1] Defendant State of Oregon did not appear on appeal.

Defendant's family purchased the benefitted land in 1929, and defendant became the owner in the 1970s. Defendant's practice has been to feed his livestock hay on the benefitted land in the winter months and to graze them on the benefitted land during the five-month summer grazing season. Defendant's family had followed a similar practice since 1929. Also, from about 1929 to the late 1980s, livestock belonging to defendant or defendant's family had unrestricted, year-round access to all areas of Meadow Creek referred to in the reservation contained in the Ayres deed, by crossing over the burdened land.

From 1986 to 1990, Earle and Dorothy Meisener owned the burdened land now owned by plaintiff. In 1987, they entered into a lease with defendant State of Oregon that authorized the erection of a riparian fence along both sides of Meadow Creek. Defendant was not a party to that lease agreement.

In the spring of 1988, defendant met Earle Meisener (Meisener) and Willie Noll, a representative of the Oregon Department of Fish and Wildlife (ODFW), on the Meiseners' property at Meadow Creek to discuss construction of the riparian fence. Noll had staked out the fence, as well as a water gap in the fence, to allow limited access to the creek. Defendant expressed concern about the width of the water gap, and Noll agreed to widen it. Defendant later contacted Noll and requested additional changes to the gap. Noll told defendant to work out the dispute with Meisener, but defendant did not do so. ODFW completed construction of the riparian fence and water gap in the fall of 1988.

In 1990, plaintiff purchased the land burdened by the easement from the Meiseners. At that time, a fenced corridor ran from defendant's land to the water gap in the riparian fence at Meadow Creek, providing defendant's livestock with a single access route over plaintiff's land to the creek.

In 1991, the original water gap was damaged by a flood. Consequently, in 1992, ODFW modified the riparian fence and water gap, resulting in a wider gap of about 50 feet. About that same time, defendant again complained to ODFW about the width of the gap, asserting that it should be about 300 feet. Also in 1992, defendant complained for the first time

to plaintiff about his limited access to Meadow Creek. Defendant never had complained to Meisener about his limited access or the width of the water gap.

In the fall of 1992, ODFW closed off the water gap for the winter months due to icing problems. As a result, defendant's livestock had no access to Meadow Creek over the burdened land during that time.

Defendant continued to complain about his limited access to Meadow Creek and the width of the water gap. The parties were unable to work out a resolution, and this litigation ensued. After a trial on the merits, the trial court entered a judgment that declared, among other things, that the easement at issue "was reserved and exists for the benefit of a livestock operation on the Benefitted Land." The judgment further declared that: (1) with limited exceptions, defendant could water 163 head of livestock year-round at Meadow Creek, albeit not through the fenced riparian area; (2) defendant, at his own expense, could widen the existing water gap to 60 feet; (3) a second corridor fence, running from defendant's land to Meadow Creek over plaintiff's land, and a second water gap must be constructed, to provide defendant's livestock with a second means of access to Meadow Creek; (4) plaintiff and defendant State of Oregon must share equally the cost of constructing the second water gap; and (5) plaintiff alone must bear the cost of constructing and maintaining the second corridor fence, as well as the cost of maintaining the first corridor fence.

Plaintiff appealed to the Court of Appeals. Among other things, he contended that the trial court erred in construing the Ayres deed in favor of defendant, a successor of the original grantors, rather than plaintiff, a successor of the original grantee. The Court of Appeals rejected plaintiff's argument, effectively stating that the reservation contained in the Ayres deed should be construed in favor of the owner of the dominant estate, here, defendant. *Tipperman*, 140 Or App at 290.

After reviewing the evidence, the Court of Appeals concluded that the trial court had construed the deed correctly and had not erred in ordering the construction of a second corridor fence and water gap. *Id.* at 289. The Court of

Appeals further concluded, citing ORS 105.175,[2] that defendant, not plaintiff, should bear the cost of maintaining—but not constructing—the second corridor fence, as well as the first corridor fence. *Id.* at 290. Accordingly, the court remanded the case with instructions to amend the judgment so that defendant would bear the sole responsibility of maintaining both corridor fences, but otherwise affirmed. Plaintiff petitioned for review in this court, and we allowed review.

Plaintiff contends that the Court of Appeals erred when it rejected his argument that the Ayres deed must be construed narrowly against defendant, the grantors' successor in interest. In plaintiff's view, had the trial court and the Court of Appeals applied his construction methodology, they would have been compelled to conclude that the reference in the Ayres deed to "stock * * * *pasturing* on adjacent lands" (emphasis added) means that only livestock actually *grazing* on defendant's land could use Meadow Creek for water and, consequently, that nongrazing livestock otherwise being fed on defendant's land are not included in the scope of the easement. For the same reason, plaintiff also contends that the Court of Appeals and the trial court erred in requiring construction of a second corridor fence and water gap. Defendant does not challenge plaintiff's contention that the Court of Appeals applied an erroneous legal standard when it construed the deed, but argues, nonetheless, that we should affirm that court's construction.

■■ Several legal principles govern the proper construction of an instrument creating an easement, whether by reservation or express grant. First, in such cases, "[i]t is the duty of the court to declare the meaning of what is written in the instrument." *Minto v. Salem Water Etc. Co.*, 120 Or 202, 210, 250 P 722 (1926). Further, the court will look beyond the

---

[2] ORS 105.175 provides, in part:

"(1) The holders of an interest in any easement shall maintain the easement in repair.

"* * * * *

"(3) The cost of maintaining the easement in repair in the absence of an agreement and in the absence of maintenance provisions in a recorded instrument creating the easement shall be shared by each holder of an interest in the easement in proportion to the use made of the easement by each holder of an interest in the easement."

wording of the instrument "only where there is an uncertainty or ambiguity." *Fendall v. Miller*, 99 Or 610, 619, 196 P 381 (1921). If the wording at issue is uncertain or ambiguous, then the court must determine the intent of the original parties by examining the relevant surrounding circumstances. *Doyle v. Gilbert*, 255 Or 563, 566, 469 P2d 624 (1970); *see also Fendall*, 99 Or at 615 ("The extent of an easement is to be determined by a true construction of the grant or reservation by which it is created, aided by any concomitant circumstances which have a legitimate tendency to show the intention of the parties."). Such circumstances include the purpose and nature of the easement, the circumstances existing at the time of the grant or reservation, and the manner in which the easement was used by the original parties. *Fendall*, 99 Or at 616; *see also Beck v. Lane County*, 141 Or 580, 591-92, 18 P2d 594 (1933) (court looked to circumstances surrounding creation of easement and actions of original parties to determine scope of easement).

■        Finally, when an ambiguity exists in a deed that reserves an easement, a supplemental rule of construction is that the reservation "is to be construed most strongly against the grantor [who reserves the easement] and in favor of the grantee." *Oliver v. Johnson*, 166 Or 475, 480, 113 P2d 430 (1941). That principle is consistent with the general rule that an ambiguity in a deed must be construed against the grantor, because it is the grantor who is deemed to have drafted the deed and who unilaterally has conveyed the land to another party. *See Hurd v. Byrnes*, 264 Or 591, 598, 506 P2d 686 (1973) (stating rule). The rule is one of last resort, to be used when other tools for construing a deed, such as an examination of the relevant surrounding circumstances, have not resolved the ambiguities. *See, e.g., id.* at 597-99 (applying rule, when determining whether grant at issue retained title or easement, only after concluding that trial record contained insufficient evidence of original parties' intent).

        The above-discussed rule of construction is well settled in the law. However, in rejecting plaintiff's contention that the Ayres deed should be construed in his favor, the Court of Appeals incorrectly stated and applied that rule, stating that "[a] reservation [of an easement] is drafted by the *grantee* and is construed in favor of the *grantee*." *Tipperman*,

140 Or App at 290 (emphasis added). As explained above, the correct statement of the law is that a reservation of an easement is deemed to have been drafted by the *grantor* of the land, and, consequently, any ambiguity must be construed in favor of the grantee of the land. Here, plaintiff is the successor in interest of the grantee of the land and is the servient owner. Thus, any ambiguity in the Ayres deed that remains after all other tools for resolving it have failed should be resolved in favor of plaintiff, rather than defendant. The Court of Appeals erred in concluding otherwise.[3]

■■ Having explained our construction methodology, we turn to the wording of the Ayres deed. The first issue of construction is the meaning of the clause "stock * * * *pasturing* on adjacent lands." (Emphasis added.) Plaintiff contends that the ordinary meaning of the word "pasturing" refers to grazing on growing grass and, consequently, that only defendant's livestock that actually are grazing on defendant's land, rather than those being fed on the land by some method other than grazing, should have access to Meadow Creek under the Ayres deed. Plaintiff also points to his own testimony in the record that there is only enough grass grown on the benefitted land to nourish about 10 cows and 10 calves during the five-month summer grazing season. Consequently, in plaintiff's view, only that number of livestock should be allowed access to Meadow Creek under the Ayres deed, and then only during the grazing season. Defendant responds that the word "pasturing" is not limited to the act of grazing on growing grass and that his livestock should have year-round access to the creek.

---

[3] The Court of Appeals relied upon another case, *Verzeano v. Carpenter*, 108 Or App 258, 815 P2d 1275 (1991), to support its statement of the rule of construction. *Tipperman,* 140 Or App at 290. However, the court quoted *Verzeano* incompletely and, consequently, applied it incorrectly. Further, the *Verzeano* decision itself inaccurately identified the owners of the *servient* estate—the grantees of the land—as the "grantors," in the context of a reservation of an easement. *Verzeano*, 108 Or App at 263. That is inconsistent with established case law that refers to the seller who reserves an easement as the grantor and to the buyer who buys the land burdened by the easement as the grantee. *See Oliver*, 160 Or at 480 (so labeling the parties). However, *Verzeano* did state, correctly, that any ambiguity in a reservation must be construed in favor of "the grantee of the *land*," that is, the owner of the servient estate. *Verzeano*, 108 Or App at 263 (emphasis added). That statement is consistent with this court's decision in *Oliver*, discussed above.

The Ayres deed itself does not define the word "pasturing." However, the dictionary is an available resource to assist us in determining the meaning of that word. At the time when the Ayres deed was executed, the dictionary definition of the verb "pasture" was consistent, for the most part, with plaintiff's position here:

"**Pasture** * * *, *v*. [a. OF. *pasturer* to feed flocks * * *]

"† **1.** *intr*. To feed, to eat (said of animals). * * *

"**b.** *spec*. Of cattle, sheep, etc.: To graze.

"* * * * *

"† **2.** *trans*. To feed, supply with food. * * *

"* * * * *

"**b.** *spec*. To feed (cattle) by letting them graze on a pasture; to lead or put to pasture.

"* * * * *

"**3.** *trans*. (Of sheep or cattle) To graze upon (herbage, grass-land), to eat down; (of persons) to put sheep or cattle on (grass-land, etc.) to graze."

VII *A New English Dictionary on Historical Principles*, 544 (1909) (boldface and emphasis in original). Although one of the above-quoted definitions refers to the act of "feed[ing]" or "supply[ing]" with food, we note that, in relation to feeding livestock, the dictionary repeatedly defines the verb "pasture" synonymously with the word "graze." Similarly, another dictionary from about the same time period defined the verb "pasture" as follows:

"**pasture** * * *, *v*.; * * * I. *trans*. To feed by grazing; supply or afford pasture or nourishment to: as, the land will *pasture* fifty oxen; the cattle were *pastured* on the hillside or in the meadow.

"* * * * *

"**II.** *intrans*. To graze; take food by eating growing herbage from the ground."

IV *The Century Dictionary*, 4323 (1890) (boldface and emphasis in original).

Thus, at the time in question, the common meaning of the verb "pasture," in relation to the act of "pasturing" livestock, referred to the act of grazing on growing grass. *See generally Fendall*, 99 Or at 616-17 ("words used in the grant of an easement should receive their plain[,] ordinary meaning," unless the context otherwise requires or unless the words carry a technical meaning). That definition, in turn, supports the conclusion that the easement reserved in the Ayres deed extends only to livestock that are grazing on growing grass on the benefitted land. However, given the additional dictionary definitions, we are hesitant to conclude that the dictionary clearly resolves the ambiguity at issue here.

Ordinarily, we next would examine the relevant circumstances surrounding the creation of the easement, in order to ascertain the intended meaning of the word "pasturing." As noted earlier, however, there is no evidence in the record concerning those circumstances. There also is no evidence that demonstrates how the original grantors—the Ayreses—used the easement after executing the deed, that is, whether their livestock crossed the burdened land year-round to reach Meadow Creek, or during only the summer grazing season.

We note that the trial court found that the easement here "was reserved and exists for the benefit of a livestock operation on the Benefitted Land."[4] *Tipperman*, 140 Or App at 285 (internal quotation marks omitted). The Court of Appeals agreed and further concluded that "both the grantor and grantee would have contemplated adjustments in the use of both the benefitted and burdened estates to meet changing circumstances [in running a livestock operation on the benefitted estate]," including allowing defendant to water livestock at Meadow Creek that are being wintered on the benefitted land. *Id.* at 292. In reaching that conclusion, the Court of Appeals cited case law from this court holding that, unless otherwise agreed, the use of an easement is subject to

_____

[4] The trial court noted that, although livestock belonging to the Ayreses probably had grazed on the benefitted land at some point during the year, the nature of running a livestock operation has changed over time and that, "when cattle are on [the benefitted] property, it seems to me it's clear they have a right to water out of [Meadow C]reek." *Tipperman*, 140 Or App at 291 n 9.

change over time, so long as that use is reasonable and not contrary to the intended scope of the easement. *See Bernards et ux. v. Link and Haynes*, 199 Or 579, 597, 248 P2d 341 (1952) ("it is settled that the grantee may avail himself of modern improvements which will enable him to enjoy more fully the rights which were granted").

■      However, it is significant that neither the trial court nor the Court of Appeals made any factual finding that indicated whether the *original* grantors—the Ayreses—had grazed their livestock on the benefitted land year-round or during only the summer months, or whether their livestock had had year-round access over the burdened land to Meadow Creek. As noted, the record contains no evidence in that regard. Consequently, the discussion by the lower courts concerning the changing nature of the livestock operation on the benefitted land misses the mark, because the nature of the operation might not have changed at all. That is to say, the Ayreses might have run their livestock operation in the same manner as defendant, grazing livestock during the summer months and feeding them during the winter months. It follows that they might have intended to reserve the right to use Meadow Creek either only while they grazed their livestock during the summer, as plaintiff contends, or also while they otherwise fed their livestock in the winter, as defendant contends. There is no evidence, however, to indicate which is the correct scenario.[5]

In light of the lack of evidence of the circumstances surrounding the creation and use of the easement by the original grantors, it is appropriate to construe the reservation contained in the Ayres deed against defendant, the grantors' successor in interest. Under that rule of construction, we conclude that the word "pasturing" refers only to livestock grazing on the benefitted land. However, because there is no such limiting wording in the deed, we cannot agree that the number of livestock must be limited to 20 head, as plaintiff contends, or even 163 head, as the trial court ordered. Rather, we

---

[5] Defendant emphasizes that, since 1929, he and his family have used the easement year-round to water their livestock. However, use of the easement by defendant and his family, who were not original parties to the Ayres deed, does not illuminate the intent of the original parties who created the easement.

hold that any livestock actually grazing on defendant's land must have access to Meadow Creek over the burdened land, as provided in the Ayres deed. The judgment of the trial court and the decision of the Court of Appeals are modified accordingly.

■ ■ Plaintiff next contends that the Court of Appeals erred when it affirmed the trial court's order to construct a second corridor fence and water gap on the burdened land, thereby allowing defendant's livestock a second means of access to Meadow Creek. In plaintiff's view, construction of a second corridor fence and water gap unreasonably would burden his enjoyment of his land, and, in any event, there is no evidence in the record that a second corridor and water gap are necessary for the use and enjoyment of defendant's easement. Defendant responds that, under the Ayres deed, he is entitled to unrestricted access to all areas of Meadow Creek and, therefore, that the construction of the second corridor fence and water gap reasonably adjusts the easement to conform to the needs of both parties.

Again, the starting point for resolving the parties' dispute is the wording of the Ayres deed itself. The deed reserved the "right of *free access*" (emphasis added) for livestock pasturing on the benefitted land "to said waters [Meadow Creek] *over said lands* [plaintiff's burdened land, as originally conveyed by the Ayreses]." (Emphasis added.) It is apparent that, by using the unqualified words "free access," the deed provided that livestock pasturing on the benefitted land should have unrestricted access to Meadow Creek at any point on the burdened land. The wording "over said lands" in the deed supports that reading, because it demonstrates that livestock pasturing on the benefitted land can cross *all* the burdened land to reach Meadow Creek. In short, we agree with defendant that the deed does not limit the means of access to the creek.

Plaintiff urges us to adopt a narrower reading of the words "free access," arguing that defendant's livestock must have *unobstructed* access to Meadow Creek, but not *unrestricted* access to the entire creek. That construction, however, is not supported by the wording of the Ayres deed. As discussed above, it is clear that, in broadly reserving the right

to have "free access * * * *over said lands*," (emphasis added), the deed reserved unrestricted access over the burdened land, in order to gain access to Meadow Creek.

In light of the broad wording of the Ayres deed, we agree with the lower courts that the construction of a second corridor fence and water gap is reasonable in order to provide defendant with a second means of access to Meadow Creek. Accordingly, we conclude that the trial court did not err in entering that aspect of the judgment.[6]

The decision of the Court of Appeals is affirmed in part and modified in part. The judgment of the circuit court is affirmed in part and modified in part, and the case is remanded to that court for further proceedings.

---

[6] Neither party challenges the allocation of financial responsibility for the construction of the second corridor fence and water gap, and the maintenance of both corridor fences.

For the reasons stated in the Court of Appeals' decision, we reject plaintiff's additional contention that defendant acquiesced in limiting his easement to the single corridor fence and water gap in 1988 and thereafter. *See Tipperman*, 140 Or App at 287-88 (concluding that defendant did not so acquiesce).