Argued and submitted August 13, 2001, reversed and remanded with instructions June 19, petition for review denied September 24, 2002 (334 Or 631)

Lars E. OLSON
and Edith L. Olson,
*Respondents,*

*v.*

Gloria Jean VAN HORN,
*Appellant.*

99CV0453; A111308

Gloria J. VAN HORN,
*Appellant,*

*v.*

Lars OLSON
and Edith L. Olson,
*Respondents.*

99CV0461

48 P3d 860

Jonathan M. Radmacher argued the cause for appellant. With him on the briefs was McEwen, Gisvold, Rankin, Carter & Streinz, LLP.

William A. McDaniel argued the cause for respondents. With him on the brief was Foss, Whitty, Littlefield, McDaniel & Bodkin, LLP.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* Warren, S. J.

**WOLLHEIM, J.**

In these actions for injunctive relief and declaratory judgment, the trial court ruled that the placement of defendant's home violated the terms of an easement.[1] Consequently, the trial court ordered defendant's home to be removed from the easement. Defendant appeals and argues that the unambiguous terms of the easement allow plaintiffs access to defendant's property to maintain the height of vegetation but do not prohibit the building of a home within the easement. We review *de novo*, ORS 19.415(3), and reverse.

In 1988, Oscar and Estrid Furnes (the Furneses) purchased a 15-acre parcel of unimproved real estate. In 1992, they partitioned the parcel into three lots, approximately five acres each. The lots are known as Parcels 1, 2, and 3.[2] Each lot has a distant view of the Pacific Ocean. Parcel 3 is the westernmost lot (closest to the ocean) and Parcel 1 is to the northeast with Parcel 2 situated in the middle. The Furneses wanted each parcel to have a building site that had an unobstructed view of the ocean and thus drafted language for a view easement with the help of plaintiffs, who were friends of the Furneses and who intended to buy Parcel 2. Parcel 2 would be burdened with a view easement for the benefit of Parcel 1 (View Easement 1), and Parcel 3 would be burdened with a view easement for the benefit of Parcel 2 (View Easement 2). View Easement 2 is the easement at issue here.

In 1994, the Furneses sold Parcel 2 to plaintiffs. That deed was properly recorded and contained the following grant:

> "TOGETHER WITH the right to enter upon the land and maintain the vegetation height within the area shown as 'View Easement 2' on Exhibit 'A' attached."

---

[1] The action for injunctive relief was filed by the Olsons, and the suit for declaratory judgment was filed by Van Horn. Because the action for injunctive relief was filed first, we refer to the Olsons as plaintiffs and to Van Horn as defendant.

[2] A map is included in the Appendix to this opinion.

Part of Exhibit A was a map that depicted View Easement 2 as a shaded area representing an approximately 120-foot-wide strip of land within Parcel 3. The map was referenced in the deed and "made a part hereof." There was no other language in the plaintiffs' deed regarding rights or restrictions in reference to View Easement 2. Mrs. Furnes and plaintiffs testified that the purpose of the view easement was to protect the view from Parcel 2 and that no structures were to be built in the view easement.

Although the Furneses had intended to build their home on Parcel 3, Mr. Furnes died, and Mrs. Furnes sold Parcel 3 to defendant in 1997. There was no language in defendant's deed about the easement. However, defendant knew of its existence and was told by plaintiffs, as well as the realtor who showed the property, that there was an easement, and defendant was not to build in it. Defendant made no attempt to determine the exact location of the easement, but she testified that out of consideration for the plaintiffs, she had not intended to build in the easement. Construction on defendant's home began in June 1999. The location of the homesite had been marked by stakes in the months preceding construction. Once construction began, plaintiffs visited the homesite almost daily. No objections were raised until August 5, 1999, when plaintiffs told defendant that they believed the house might be encroaching on the view easement. Defendant immediately hired a surveyor to conduct an informal survey. The surveyor believed that defendant's home was probably in the easement, but he could not be sure without conducting a formal survey. Defendant chose not to do the formal survey and construction on the home continued. As of August 6, 1999, defendant had spent $70,000 building the home. The contractor testified that the foundation had been laid and 90 percent of the framing had been completed. Plaintiffs filed for an injunction and had the formal survey done on February 23, 2000. The formal survey revealed that the home extended into the view easement approximately 22 feet.[3] If the deck on the home was completed as planned, the home would extend approximately 36

[3] The survey had a margin of error of plus or minus five feet.

feet into the view easement. Pictures show that the vast majority of plaintiffs' view remains undisturbed.

The trial court held that the terms of the easement are ambiguous and found that extrinsic evidence demonstrated that the Furneses' intent was to prohibit the construction of any structure in the view easement. It found that balancing hardships would not be proper under the circumstances and ordered that the house be moved or modified not to extend into the easement.

On appeal, defendant assigns error to the trial court's holding that the easement's language was ambiguous. In the alternative, defendant argues that any ambiguity was not resolved by the extrinsic evidence and the easement should have been construed against plaintiffs. Defendant argues that, if the easement is construed against her, the court should have balanced the equities and relative hardships of the parties. Because we hold that the language of the easement is unambiguous, we do not address defendant's alternative arguments.

"In construing an easement, our fundamental task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Watson v. Banducci*, 158 Or App 223, 230, 973 P2d 395 (1999) (citing *Bernards et ux. v. Link and Haynes*, 199 Or 579, 593, 248 P2d 341 (1952), *on reh'g* 199 Or 579, 263 P2d 794 (1953)). In *Tipperman v. Tsiatsos*, 327 Or 539, 964 P2d 1015 (1998), the Supreme Court explained the legal principles that govern the proper construction of an easement:

> "First, in [easement] cases, '[i]t is the duty of the court to declare the meaning of what is written in the instrument.' *Minto v. Salem Water Etc. Co.*, 120 Or 202, 210, 250 P 722 (1926). Further, the court will look beyond the wording of the instrument 'only where there is an uncertainty or ambiguity.' *Fendall v. Miller*, 99 Or 610, 619, 196 P 381 (1921). If the wording at issue is uncertain or ambiguous, then the court must determine the intent of the original parties by examining the relevant surrounding circumstances. *Doyle v. Gilbert*, 255 Or 563, 566, 469 P2d 624 (1970) * * *. Such circumstances include the purpose and nature of the easement, the circumstances existing at the time of the grant or

reservation, and the manner in which the easement was used by the original parties." *Id.* at 544-45.

If the meaning of the provision remains ambiguous after examining extrinsic evidence, the court relies on maxims of construction to resolve the ambiguity. *Id.* at 545.

 We begin by looking at the text of the disputed provision in the context of the deed as a whole to determine whether an ambiguity exists. Whether a term is ambiguous is a question of law. *Yogman v. Parrott,* 325 Or 358, 361, 937 P2d 1019 (1997). A provision is ambiguous if, in context, it can reasonably be given more than one meaning. *Pacific First Bank v. New Morgan Park Corp.,* 319 Or 342, 347-48, 876 P2d 761 (1994).

Defendant argues that the easement was unambiguous because the only reasonable interpretation was that plaintiffs had a right of access to cut vegetation and no more. We agree. The deed grants "the right to enter upon the land and maintain the vegetation height within the area shown as 'View Easement 2' on [Appendix A]." No other rights are granted nor are any other purposes stated.

Plaintiffs argue that the easement is ambiguous because the words "view easement" on the map, coupled with the right to maintain the vegetation height, could reasonably be interpreted as giving something more than the right to maintain the height of vegetation. Presumably, that "something more" is a right to remove any obstruction from the easement or possibly a right to an unimpeded view. However, in considering whether there are other reasonable interpretations, we are limited by ORS 42.230, which provides:

> "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, *not to insert what has been omitted, or to omit what has been inserted*; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all." (Emphasis added.)

In *Criterion Interests, Inc. v. The Deschutes Club,* 136 Or App 239, 902 P2d 110, *mod on recons* 137 Or App 312, 903 P2d 421 (1995), *rev den* 322 Or 489 (1996), the plaintiff

purchased land with an easement across the defendant's property that permitted access to and from the Deschutes River. The plaintiff wanted to use the easement for recreational purposes. The defendant argued that the easement had memorialized an existing arrangement that permitted access to the river for agricultural purposes. Specifically, the circumstances showed that the plaintiff's predecessor in interest used the easement for his cattle business. We held that the language used did not contain any limitations on use and, therefore, any reasonable use was allowed. We explained:

> "[A]s we have indicated, the court may not 'insert what has been omitted or omit what has been inserted.' ORS 42.230. Evidence of the circumstances under which an agreement is made that is indicative of the parties' intent may only affect the interpretation of the agreement when there is language in the agreement that is susceptible to being construed to carry out that intent. Here, there is *no* language in the easement limiting the use for which access may be used." *Id.* at 246 (emphasis in original).

Here, there is no language to support plaintiffs' argument that the language is ambiguous because the words "view easement" could reasonably be read to confer rights in addition to those specified. Such an inference would require us to insert language that gives plaintiffs the right to remove all obstructions from the view easement or the right to an unimpeded view. ORS 42.230 prohibits us from doing so.

7. Plaintiffs also argue that the surrounding circumstances create an ambiguity in the language. Specifically, plaintiffs refer to statements made by the Furneses to a number of people that they wanted to protect the view. We decline to consider surrounding circumstances in the first step of the analysis. *Tipperman* plainly states that in interpreting easements, "the court will look beyond the wording of the instrument 'only where there is an uncertainty or ambiguity.'" 327 Or at 544-45 (quoting *Fendall v. Miller*, 99 Or 610, 619, 196 P 381 (1921)).[4]

---

[4] In *Tipperman*, the Supreme Court did not refer to ORS 42.220, which provides that, "[i]n construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is

Lastly, plaintiffs argue that adopting such an interpretation would ignore the words "view easement" on the map and that their right to maintain the vegetation height would become a nullity if defendant was able to build a two story house in the middle of the easement. We disagree.

Our interpretation does not ignore the words "View Easement 2" on the map. The shaded area of the map labeled "View Easement 2" refers to the area where plaintiffs have the right to enter and maintain vegetation height. If plaintiffs' right to maintain vegetation height becomes a nullity at some point in the future, it is because the easement language was poorly drafted.

Reversed and remanded with instructions to enter declaratory judgment for defendant.

---

interpreting." Nor did the court refer to *Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994), in which it reasoned that "[t]he trial court may consider parol and other extrinsic evidence to determine whether the terms of an agreement are ambiguous. ORS 42.220." While *Tipperman* indicates that extrinsic evidence should be considered only if the test of the instrument is ambiguous, *Ambercrombie* indicates that extrinsic evidence may be considered to determine whether the text of the instrument is ambiguous. We have previously recognized the tension between those cases. *See Portland Fire Fighters' Assn. v. City of Portland*, 181 Or App 85, 94 n 6, 45 P3d 162 (2002); *OTECC v. Co-Gen*, 168 Or App 466, 476 n 8, 7 P3d 594 (2000), *rev den* 332 Or 137 (2001). In this case, we adhere to the methodology in *Tipperman* because, according to the Supreme Court, that methodology reflects the "legal principles govern[ing] the proper construction of an instrument creating an easement." 327 Or at 545.