Argued and submitted on September 29, reversed and remanded
November 1, 2023

Jane KRISTOF,
individually,
and Nicholas Kristof
and Sheryl Wudunn,
husband and wife,
*Plaintiffs-Appellants,*

*v.*

Matthew A. MEALEY
and Rebecca Bowman-Mealey,
husband and wife,
*Defendants-Respondents.*

Yamhill County Circuit Court
21CV12195; A178517

538 P3d 920

In this declaratory judgment action, plaintiffs seek to establish the existence and location of what they contend is a 16-foot easement across defendants' property. They appeal from a judgment for defendants, contending that the trial court erred in determining, on the parties' cross-motions for summary judgment, that plaintiffs do not have an easement across defendants' property but instead have a fee simple interest in a 16-foot strip along the western boundary of defendants' property. *Held*: The trial court erred in granting defendants' motion for summary judgment and in denying plaintiffs' motion based on the court's determination that, consistent with the existence of a tax lot created by the county assessor, a 1959 deed by defendants' predecessor to plaintiffs' predecessor describes a fee simple interest in a 16-foot strip along the western boundary of defendants' property rather than an easement across defendants' property. The trial court's summary judgment ruling is inconsistent with the deed's statement that it grants a "right-of-way," terminology generally descriptive of an easement rather than a fee interest. Additionally, although the 1959 deed used a preprinted form captioned "Warranty Deed," which would ordinarily be associated with the conveyance of fee simple title, the terms of the deed control and reflect an intention to grant an easement rather than a fee interest, stating that the right-of-way runs from a location on plaintiffs' parcel to a state highway, "over and across" property unambiguously described by metes and bounds as defendants' parcel, rather than a 16-foot strip along its western edge. The exact location of the easement will be for the trial court to determine on remand based on the grantors' and grantees' intentions.

Reversed and remanded.

Jennifer K. Chapman, Judge.

Elena M. Farley argued the cause for appellants. Also on the briefs were Martinis & Farley.

Thomas A. Larkin argued the cause for respondents. Also on the brief were Tyler J. Storti and Sokol, Larkin, Wagner & Storti LLC.

Before Egan, Presiding Judge, and Kamins, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reversed and remanded.

### KISTLER, S. J.

The trial court ruled on summary judgment that a 1959 deed did not grant plaintiffs an easement over defendants' property and entered a judgment to that effect. On appeal, we conclude that the deed, read as a whole, unambiguously grants plaintiffs an easement but does not specify precisely where over defendants' property the easement runs. We reverse the trial court's judgment and remand this case for further proceedings.

Defendants' property lies immediately to the south of plaintiffs' property. In 1959, the Delletiglies owned the property that defendants now own.[1] In that year, the Delletiglies used a preprinted form for a warranty deed to grant the following interest to plaintiffs' predecessors in interest:

"A sixteen foot Right of Way running from the Northeast Quarter of the Northwest Quarter of Section 23, Township 2 South, Range 4 West in a Southeasterly direction to a point on the Northerly line of the Tualatin Valley State Highway over and across the following described property: [a metes and bounds description that, as we discuss below, describes the Delletiglies' property in 1959]."

After a dispute arose between the parties about the "sixteen foot Right of Way" that the 1959 deed granted, plaintiffs brought this action to establish the existence and location of what they contend is a 16-foot easement across defendants' property.

Defendants counterclaimed and moved for summary judgment on plaintiffs' claims and their counterclaims. Defendants argued, in support of their summary judgment motion, that the 1959 deed gave plaintiffs fee simple title to a 16-foot strip of land. In defendants' view, the metes and bounds description set out in the deed identifies

---

[1]  In 1959, the Delletiglies owned more property than defendants now own. In this opinion, we use the phrase "the Delletiglies' property" to refer to the parcel of property that the Delletiglies owned in 1959 that is largely the same as defendants' current property. The primary difference between the Delletiglies' property in 1959 and the property that defendants now own is that two small lots were carved out of the Delletiglies' property before defendants purchased it. Those two small lots are not material to the issues this case presents.

the boundaries of that 16-foot strip, which they contend runs along the western edge of their property.

Plaintiffs responded by filing a cross-motion for partial summary judgment. They argued that the 1959 deed granted their predecessors in interest a 16-foot easement over and across defendants' property but that the deed does not specify where over defendants' property the easement runs. Plaintiffs reasoned that, in that respect, the deed is typical of many conveyances that grant an easement but leave the easement's exact location to be determined under the "practical location" doctrine.

At first blush, one might wonder why defendants are arguing that the 1959 deed gave plaintiffs fee simple title to a 16-foot strip of land rather than a 16-foot easement. After all, an easement is a lesser property interest than fee simple title. As we understand the parties' positions, however, they differ primarily over the location of the 16-foot right-of-way. Defendants argue that the location of the right-of-way is fixed by the metes and bounds description in the deed, which places the 16-foot strip of land immediately to the west of their property and contiguous with their western boundary. Plaintiffs, for their part, read the metes and bounds description differently. They reason that the metes and bounds description defines the property that the Delletiglies owned in 1959 and over and across which plaintiffs' 16-foot easement runs. They necessarily disagree with defendants that the metes and bounds description identifies a 16-foot strip of land that runs along the western border of defendants' property.

The trial court essentially adopted defendants' arguments. It granted defendants' summary judgment motion, denied plaintiffs' cross-motion for partial summary judgment, and entered judgment accordingly. On appeal, both parties agree that the interpretation of the 1959 deed presents a question of law. They disagree, however, what the deed means. Their disagreement turns initially on the terms used in the deed. Defendants note that the preprinted form that the 1959 deed used is captioned "Warranty Deed" and that the preprinted part of that deed uses terms that ordinarily are associated with conveying fee simple title to

property. Plaintiffs respond that the Delletiglies described the property interest that they conveyed to plaintiffs' predecessors in interest as a "Right of Way," a phrase that typically identifies an easement.

The Oregon Supreme Court considered a virtually identical issue in *Cappelli v. Justice*, 262 Or 120, 496 P2d 209 (1972), and it dismissed out of hand essentially the same argument that defendants initially make here. The court explained:

> "We do not regard [the use of a warranty deed to convey a right of way] as having any significance. We are sure that many deeds denominated 'Warranty Deed' contain grants of easements described as rights of way."

*Id.* at 126. Although similar to this case, *Cappelli* differs in one critical respect. In *Cappelli*, the court was reviewing the trial court's decree *de novo*. *See Tipperman v. Tsiatsos*, 327 Or 539, 964 P2d 1015 (1998) (identifying that standard of review, which *Tipperman* and earlier cases applied). Employing that standard of review, the Supreme Court in *Cappelli* was free to resolve competing factual inferences and to do so differently from the trial court. This case, by contrast, arises on summary judgment. In that procedural posture, neither we nor the trial court can resolve the 1959 deed's jumbled use of terms associated with conveying fee simple title, on the one hand, and easements, on the other, to determine the nature of the interest that the deed conveyed. The conflicting inferences arising from the use of those competing terms do not point in only one direction.[2]

_____

[2] Defendants argue that that this case differs from *Cappelli* in one other respect. They contend that, unlike the deed at issue in *Cappelli*, the 1959 deed granting the right-of-way in this case did not expressly reserve the Delletiglies' right to use the underlying land. It follows, they argue, that the right-of-way granted by the 1959 deed should not be viewed as an easement. Defendants misperceive what *Cappelli* said. The passage from *Cappelli* on which defendants rely was discussing an earlier deed in which the grantor transferred fee simple title to property but reserved an easement for the grantor's use. *See* 262 Or at 127. *Cappelli* did not say that a deed granting a right-of-way (as opposed to a deed reserving a right-of-way) must also reserve the grantor's right to use the underlying land before the right-of-way may be considered an easement. Such a statement would have been contrary to longstanding law. *See Miller v. Vaughn*, 8 Or 333, 336 (1880) (rejecting the criterion that defendants erroneously argue that *Cappelli* established).

If those competing terms were all that the 1959 deed contained, we would reverse the judgment and remand this case for trial so that the trial court could find what the Delletiglies had intended. Three other aspects of the deed, however, fix the Delletiglies' intent and lead us to conclude, as a matter of law, that plaintiffs' interpretation of the deed is correct. We identify those three aspects and then discuss them briefly. First, the 1959 deed describes where the 16-foot right-of-way runs. According to the deed, the right-of-way runs from an undefined point in a quarter-quarter section of plaintiffs' property to an undefined point on a highway on the southeasterly border of defendant's land. The deed does not say that the right-of-way runs along a specific location, and it certainly does not say that the right of way runs along the western border of defendants' land, as defendants argue. Second, the deed states that the right-of-way runs "over and across" a parcel of land described by its metes and bounds—a prepositional phrase that almost invariably is used to describe the grant of an easement, not the grant of fee simple title. Third, the parcel of land that the deed describes by its metes and bounds—namely, the parcel that the deed says the right-of-way runs "over and across"—is the property the Delletiglies owned in 1959. Contrary to defendants' argument, the metes and bounds description set out in the 1959 deed does not define the boundaries of the 16-foot right-of-way.

We discuss each of those points briefly. First, according to the 1959 deed, the right-of-way "run[s] from the Northeast Quarter of the Northwest Quarter of Section 23 *** in a Southeasterly direction to a point on the Northerly line of the Tualatin Valley State Highway."[3] Put differently, the right-of-way runs from an unspecified point in an area owned by plaintiffs (the Northeast Quarter of the Northwest Quarter of Section 23) to an unspecified point on the Tualatin Valley State Highway, which forms the southeastern border of defendants' property.

---

[3] For surveying purposes, land is divided into 640-acre sections. Each section is divided into four quarters: northwest, northeast, southwest, and southeast. Each quarter section is divided further into four quarters—for example, the Northeast Quarter of the Northwest Quarter of Section 23. The section or quarter section in which land is located can provide a reliable starting point for a metes and bounds description.

Some deeds granting an easement will specify the easement's exact location; for example, they will describe the easement's centerline. *See Tipperman v. Tsiatsos*, 140 Or App 282, 286, 915 P2d 446 (1996) (illustrating that proposition), *modified in part on other grounds by Tipperman*, 327 Or at 549-50. Other deeds, however, will identify a parcel of land over and across which the easement runs but will not specify more particularly where the easement lies. *Id.* In those situations, courts have looked for clues to the grantor's and grantee's intent to determine the easement's exact location. *Id.* (discussing the practical location doctrine); *see Powers v. Coos Bay Lumber Co.*, 200 Or 329, 391, 263 P2d 913 (1953) (same). The absence of a specific location for the right-of-way cuts in favor of plaintiffs' argument that the Delletiglies intended to grant an easement, not fee simple title.

The second point is related to the first. The 1959 deed does provide one clue as to where the right-of-way runs. It says that the 16-foot right-of-way "run[s] *** over and across the following described property," and, as we explain below, the metes and bounds description that follows describes the property that the Delletiglies owned in 1959. The prepositional phrase "over and across the grantors' property" is almost invariably used to describe the grant of an easement. *See Cappelli*, 252 Or at 126 (so recognizing but noting that the absence of that phrase does not necessarily mean that the grantor did not intend to convey an easement). Given the deed's use of the phrase "over and across the following described property," we are hard pressed to conclude that the Delletiglies granted anything other than an easement.

The third point removes any doubt about the Delletiglies' intent. The metes and bounds description contained in the deed describes the property that the Delletiglies owned in 1959; that is, it makes clear that the right-of-way runs over and across the property that the Delletiglies owned in 1959 and that defendants now own. The metes and bounds description does not describe the boundaries of the 16-foot right of way, nor does it locate the 16-foot right

of way along the western border of defendants' property, as defendants argue.

The deed sets out the following metes and bounds description of a parcel of real property:

> "Beginning at a point on the North line of Lot 2 of Section 23, Township 2 South, Range 4 West of the Willamette Meridian, 800 feet East of the Northwest corner of said lot; thence South 400 feet thence 46° 14' East to a point on the Northerly line of the Tualatin Valley State Highway; thence following the Northerly line of said Highway in a Northeasterly direction to a point on the North line of the Southwest Quarter of the Northeast Quarter of Section 23, Township 2 South, Range 4 West; thence West following the legal subdivision line to the point of beginning."

The parties agree, and so do we, that the first part of the metes and bounds description—the part that starts "Beginning at a point on the North line of Lot 2" and that continues "to a point on the Northerly line of the Tualatin Valley State Highway"—identifies the western boundary of the Delletiglies' property in 1959. They also agree that the Tualatin Valley State Highway formed the southeastern border of the Delletiglies' property in 1959.

From that point (the point on the northerly line of the Tualatin Valley State Highway), the metes and bounds description "follow[s] the Northerly line of said Highway in a Northeasterly direction to a point on the North line of the Southwest Quarter of the Northeast Quarter of Section 23." The map of the property, on which both sides rely, shows that the Tualatin Valley State Highway curves in a large northeasterly arc until it reaches the northern border of the Delletiglies' property in 1959 (the "North line of the Southwest Quarter of the Northeast Quarter of Section 23"). The Tualatin Valley State Highway does not reach "a point on the North line of the Southwest Quarter of the Northeast Quarter of Section 23" until it has traversed the majority of, if not all, the property that defendants now own.[4]

---

[4] The metes and bounds description follows the Tualatin Valley State Highway for the length of defendants' property—from the Northwest Quarter of Section 23 to the Northeast Quarter of Section 23. It does not follow the Tualatin Valley State Highway for a mere 16 feet and then turn north, as defendants' argument assumes.

From that point, the metes and bounds description traces the northern boundary of defendants' property, which it says runs "West following the legal subdivision line to the point of beginning."

The metes and bounds description is telling. It describes the metes and bounds of a three-sided piece of land, shaped like a fat slice of pie. It does not describe, as defendants argue, the boundaries of a skinny, four-sided right-of-way that runs along the western edge of their property. Instead, the metes and bounds description defines the Delletiglies' property in 1959, which defendants now largely own. Not only is defendants' interpretation of the metes and bounds mistaken, but their interpretation of the metes and bounds description is at odds with what the deed says. The deed says that the 16-foot right-of-way "run[s] *** over and across the following described property." It does not say that the "following described property" defines the boundaries of the 16-foot right-of-way. Defendants err in arguing otherwise.

Defendants advance two other arguments that warrant brief mention. As defendants note, the county tax assessor created tax lot 1600, which is identified on the assessor's map as a narrow strip of land that runs along the western border of defendants' property. Much of defendants' argument rests on the assumption that tax lot 1600, as depicted on the assessor's map, represents the 16-foot right-of-way that the 1959 deed granted. The basis for defendants' assumption is not apparent, however. The record does not reveal when the county assessor created tax lot 1600, nor does it reveal whether the county assessor created that tax lot based on the 1959 deed, another deed, or some other source. And, as our preceding discussion makes clear, the easement appurtenant granted by the 1959 deed provides no basis for creating a tax lot, much less one that runs along the western border of defendants' property.[5] Put differently,

---

[5] Ordinarily, easements appurtenant, as opposed to easements in gross, are not "specifically and separately assessed"; rather, the value of appurtenant easements is included in the assessment of the dominant estate. *Rockwood Development Corp. v. Dept. of Rev.*, 10 OTR 95, 98 (1985); *cf. Clackamas Cty Assessor v. Village at Main St. Phase II*, 349 Or 330, 245 P3d 81 (2010) (explaining that site developments, such as roads, sidewalks, and water lines, were an integral part of the land underlying an apartment complex development and should

whatever tax lot 1600 reflects, the unambiguous terms of the Delletiglies' 1959 deed establish that it does not reflect the 16-foot easement that that deed granted.

Defendants also rely on later events, such as what plaintiffs' real estate agent told them when they were buying their property and the initial positions that plaintiffs allegedly took, perhaps based on that advice, in their discussions with defendants. Defendants never explain, however, how a lay person's understanding of the property interests at stake, made almost 60 years after the Delletiglies granted the easement, can trump what the terms of the 1959 deed unambiguously say.

Considering all the terms in the 1959 deed, we conclude that only one interpretation is reasonably permissible: As plaintiffs argue, the 1959 deed conveyed a 16-foot easement to plaintiffs' predecessors in interest over and across the property that the Delletiglies owned in 1959. The deed, however, does not specify where over that property the easement runs, and plaintiffs properly did not move for summary judgment on that issue. This case must go back to the trial court so that it can decide that issue.

In considering that issue, the controlling question is what the Delletiglies and plaintiffs' predecessors in interest intended when the Delletiglies granted the easement in 1959. In similar situations, the courts have determined the grantor's and grantee's intent by looking to the grantee's use of a road either at the time the easement was granted or shortly afterwards; that is, they have inferred an implied agreement to fix the location of the easement "arising out of the use of a particular way by the grantee and acquiescence on the part of the grantor." *Cullison v. Hotel Seaside, Inc.*, 126 Or 18, 22-23, 268 P 758 (1923); *cf. Tipperman*, 327 Or at 541-42, 549-50 (declining to consider consistent usage that occurred 20 years after an easement was reserved to determine the grantors' intent). They also have considered the reason for granting the easement in the first place

---

have been included in assessing the value of the land). It follows that the appurtenant easement that the 1959 deed conveyed to plaintiffs' predecessors in interest ordinarily would not (or should not) have resulted in the creation of a separate tax lot.

in determining what the grantor and grantee intended. *Cullison*, 126 Or at 22-23; *cf. United States v. Oregon Elec. Ry. Co.*, 195 F Supp 182, 186-87 (D Or 1961) (looking to the negotiations between the parties to determine their intent). Finally, while the grantor and grantee may expressly agree on the location of an easement, neither party has offered any evidence to show that the Delletiglies and plaintiffs' predecessors in interest entered into an express agreement regarding the location of the 16-foot easement. For the reasons explained above, we reverse the trial court's judgment and remand this case for further proceedings consistent with this decision.

Reversed and remanded.