768

Argued and submitted November 6, 2013, affirmed February 5, 2014

Scott STEVENS
and Debra Stevens,
*Petitioners,*

*v.*

CITY OF ISLAND CITY
and Jon Fregulia,
*Respondents.*

Land Use Board of Appeals
2013036; A155003

324 P3d 477

Philip M. Wasley argued the cause for petitioners. With him on the brief was Wasley Law Office, P. C.

Jennifer M. Bragar waived appearance for respondent City of Island City.

No appearance for respondent Jon Fregulia.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Over objections of petitioners and others, the City of Island City approved an application for a home-occupation permit, which imposed conditions upon, but allowed the operation of, a commercial trucking company out of a rural residence in which Fregulia and his family lived. Petitioners appealed the city's decision to the Land Use Board of Appeals (LUBA), raising nine assignments of error. LUBA agreed, in part, with a number of petitioners' arguments and, accordingly, remanded the case to the city for further consideration. Petitioners seek judicial review of LUBA's decision. We write to address only petitioners' contention that LUBA erred when it concluded that Fregulia's home occupation was secondary to the main, residential use of his property, as required by the City of Island City Development Code (ICDC). For the reasons that follow, we affirm.

The basic facts, as set out in LUBA's opinion, are not in dispute:

"The subject property is a four-acre parcel 200 feet wide and 800 feet deep, zoned Low Density Residential (R-E). The parcel is developed with a single-family dwelling, and a 4,500 square foot workshop that [Fregulia] constructed in 2008. Surrounding property is also zoned R-E, except for property across Buchanan Lane, which is zoned and developed for industrial use. Petitioners are adjacent property owners. Their dwelling is located approximately 125 feet from [Fregulia]'s workshop, and the access driveway to the workshop is located approximately 75 feet from their back patio.

"[Fregulia] owns a commercial trucking operation consisting of six semi-trucks, along with a number of trailers, which [Fregulia] has operated from the subject property since 2008 without obtaining a home occupation permit. In response to neighbors' complaints, in June 2010 [Fregulia] applied for a home occupation permit. At that time the property was located in [Union County], but [was] within the city's urban growth boundary. The city processed and approved the permit with conditions, but the county board of commissioners ultimately denied the permit on appeal. In February 2012, the property was annexed into the city, and in September 2012 [Fregulia] filed with the city the present application for a home occupation permit and site plan review.

"\* \* \* \* \*

"[Fregulia] proposed to operate the commercial trucking business from a 600 square foot space in the 4,500 square foot workshop, and to engage one non-family employee to maintain and repair his trucks within that space. City staff recommended approval, based on a number of conditions limiting home occupation activities. The city council conducted a hearing on the application, at which petitioners appeared in opposition. On March 5, 2013, the city council voted to approve the application with conditions. Among other limitations, the conditions limit use of the workshop to 600 square feet, for maintenance of [Fregulia]'s trucks, prohibit more than one truck on the site at any time, prohibit outdoor storage of trailers, parts or materials, prohibit use of maintenance machinery outdoors, limit truck trips to one outgoing trip and one incoming trip per truck per day, and limit truck maneuvering during non-business hours to portions of the site within 100 feet of Buchanan Lane."

*Stevens v. Fregulia*, ___ Or LUBA ___, ___ (LUBA No 2013-036, Aug 7, 2013) (slip op at 2-3).

Petitioners appealed the city's decision to LUBA, raising nine assignments of error. As pertinent here, petitioners contended that the city "erred by finding that the home occupation is secondary to the residence," as required by ICDC 10.07 (2001).[1] In reaching that conclusion, the city had found that (1) "[Fregulia] and his family reside in the home on site," (2) "[t]here are no customers or product vending on site," (3) "[n]o sign is proposed for the business," and (4) the city had "adopted a condition limiting truck maintenance activities to working hours." Given those findings, the city concluded "that the property is primarily used as a residence, and the proposed home[-]occupation use is secondary to the residential use." Before LUBA, the entirety of petitioners' argument reduced to a single paragraph:

---

[1] ICDC 10.07 has since been amended, but, as applicable here, it provided in part:

"The following standards shall apply to home occupations:

"A) **Secondary to Residence.** The home occupation shall be secondary to the main use of the property as a residence."

(Emphasis in original.)

"The City glossed over this requirement without addressing the impact of the home occupation. The home occupation in this case consists of six (or any [number]) [of] semi-trucks making daily trips in and out of a rural residential property, a full-time mechanic, multiple supply vendors, and maintenance with the use of air compressors, air ratchets, fork lifts, and steam cleaners. The home occupation occurs mainly on the grounds and in the shop. It runs almost 24 hours a day. By any empirical standard, the main use of the property is a commercial trucking operation."

In response, the city contended that each of the factors on which it had relied in reaching its decision was based on substantial evidence in the record and that petitioners' contrary characterization of the home occupation did not provide a basis on which LUBA could reverse the city's decision. As to petitioners' characterization of the home occupation, the city contended that it was full of errors, pointing specifically to the conditions of approval that "provide limits on the extent of the home[-]occupation use, limit the number of vehicles allowed on-site to [Fregulia's] six[-]vehicle fleet, and limit the hours and location of maintenance operations." In any event, the city contended that, to the extent that evidence in the record might support petitioners' characterization of the home occupation, the mere citation to opposing evidence in the record does not establish that the evidence on which the city relied is not substantial evidence.

In a divided opinion, LUBA remanded the city's decision approving the home occupation permit, but it denied petitioners' assignment of error challenging the city's conclusion that the home occupation was secondary to the main use of the property as a residence. After restating the city's findings in support of its conclusion, a majority of the LUBA members concluded:

"Petitioners disagree with [the city's] conclusion, arguing that by any empirical measure the commercial trucking operation is the main use of the property. However, petitioners' mere disagreement with the city's conclusion does not establish a basis for reversal or remand. Petitioners have not established that no reasonable person could conclude, as the city council did, that as conditioned the home occupation is secondary to the main use of the property as a residence."

*Stevens,* ___ Or LUBA at ___ (slip op at 7).[2] Petitioners sought judicial review.

When reviewing a land use decision, LUBA may reverse or remand the local government's decision if the decision is based on facts that are "not supported by substantial evidence in the whole record." ORS 197.835(9)(a)(C). If, viewing the record as a whole, a reasonable person could make the disputed factual finding, then the finding is supported by substantial evidence. *Wetherell v. Douglas County*, 209 Or App 1, 4, 146 P3d 343 (2006) (citing *Younger v. City of Portland*, 305 Or 346, 360, 752 P2d 262 (1988)). So long as that standard is met, LUBA cannot substitute its view of the evidence for that of the local government. *1000 Friends of Oregon v. Marion County*, 116 Or App 584, 587, 842 P2d 441 (1992) (citing *Younger*, 305 Or at 360).

Our role on judicial review of LUBA's order is even more circumscribed: We examine whether LUBA has applied the proper substantial-evidence standard of review. *Citizens for Responsibility v. Lane County*, 218 Or App 339, 344, 180 P3d 35 (2008). "[W]here LUBA has properly understood and applied the 'substantial[-]evidence' test * * *, a reviewing court should affirm its order, notwithstanding the reviewing court's disagreement with LUBA as to whether the evidence is 'substantial.'" *Younger*, 305 Or 358-59. Thus, where LUBA properly articulates its substantial-evidence standard of review under ORS 197.835(9)(a)(C), we will not reverse its determination unless there is no evidence to support the finding or if the evidence in the case is "so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review." *Id.* at 359.

On review, petitioners reprise their basic argument to LUBA, while recasting it to more directly address LUBA's substantial-evidence test and our role on review. Petitioners again point to evidence in the record that supports their

---

[2] The third board member agreed with petitioners, noting that "to conclude that the proposed commercial trucking business will be secondary to the property's residential use is preposterous." He concluded that "a reasonable person would not conclude on this record that the approved commercial trucking business will 'be secondary to the main use of the property as a residence.'" *Stevens,* ___ Or LUBA at ___ (slip op at 13).

portrayal of Fregulia's trucking operation. In light of that evidence, petitioners "believe the conclusion [that the home occupation will be secondary to the main use of the property as a residence] is one no reasonable person could make." Citing *Younger*, they "suggest [that] this is one of those rare occasions when the standard of review for LUBA * * * has been misapplied." We disagree.

Although LUBA's treatment of petitioners' assignment of error was brief, we see nothing in it that leads us to conclude that LUBA misunderstood or misapplied its standard of review.[3] LUBA referred to the evidence on which the city had relied in reaching its decision, *viz.*, that Fregulia and his family live on the property, that no customers or sales were to be allowed on site, that no signage was proposed, and that conditions were imposed limiting the location, time, and activities associated with the home occupation. Petitioners do not contest those facts. LUBA's articulated conclusion—*viz.*, that "[p]etitioners have not established that no reasonable person could conclude, as the city council did, that as conditioned the home occupation is secondary to the main use of the property as a residence"— is consistent with its substantial-evidence review task.

We are cognizant that a commercial trucking operation is not the sort of occupation that commonly occurs within the home. However, we must affirm LUBA's decision if LUBA properly understood and applied the substantial-evidence test contained in ORS 197.835(9)(a)(C). Based on the record before us, we conclude that it did and, hence, that its order is not unlawful in substance.

Affirmed.

---

[3] Although LUBA did not set out its standard of review in its treatment of this assignment, it accurately did so earlier in its order:

"Substantial evidence is evidence a reasonable person would rely on in making a decision. In reviewing the evidence, LUBA may not substitute its judgment for that of the local decision maker. Rather, LUBA must consider all the evidence to which it is directed, and determine whether based on that evidence, a reasonable local decision maker could reach the decision that it did."

*Stevens*, ___ Or LUBA at ___ n 2 (slip op at 4 n 2) (citations omitted).