674 July 9, 2025 No. 609

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

JUNIPER INSTITUTE, LLC,
*Respondent,*

*v.*

DESCHUTES COUNTY,
*Petitioner,*

*and*

Carey BRENNAN
and Pronghorn Community Association,
*Intervenors-Respondents below.*

Land Use Board of Appeals
2024077;
A186996

Argued and submitted May 9, 2025.

Stephanie Marshall argued the cause and filed the brief for petitioner.

Alex J. Berger argued the cause for respondent. Also on the brief was Emerge Law Group.

Kevin Jacoby and Harrang Long, P.C., filed the brief *amicus curiae* for Cannabis Industry Alliance of Oregon, Inc.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

Deschutes County seeks judicial review of a Land Use Board of Appeals (LUBA) order that reversed its denial of a conditional use permit (CUP) to Juniper Institute, LLC. Juniper sought to establish and operate a psilocybin services center within Juniper Preserve, a destination resort, which is accessed through Bureau of Land Management (BLM) land under a right-of-way agreement (the BLM ROW). The county denied the CUP based on its determination that Juniper had not demonstrated that the site was suitable based on the adequacy of transportation access, as required by Deschutes County Code (DCC) 18.128.015(A)(2), because it is illegal to transport psilocybin across federal land and the BLM ROW did not otherwise allow such transport. LUBA reversed and directed the county to approve the CUP. The county seeks review of LUBA's decision, raising six assignments of error.

We do not address the merits of the county's first and sixth assignments of error, neither of which was sufficiently preserved below.[1] We also do not address the county's fourth assignment of error, because our disposition on the other assignments obviates the need to do so.[2] As to the county's remaining three assignments of error, we conclude that LUBA's order is unlawful in substance, ORS 197.850(9)(a). In brief, we conclude that (1) the county's construction of DCC 18.128.015(A)(2) was plausible, (2) the county did not exceed its authority under the Oregon Psilocybin Services Act in denying the CUP, and (3) LUBA erred in concluding that Juniper was entitled to a CUP as a matter of law because that conclusion improperly relieved Juniper of the burden of proof it bore to demonstrate that it met the criteria in DCC 18.128.015(A)(2). Accordingly, we reverse and remand.

---

[1] In its first assignment of error, the county argues that LUBA "fail[ed] to accord the [c]ounty's denial of a CUP application the presumption of regularity accorded such decisions under Oregon law." In its sixth assignment, the county asserts that LUBA's order requiring it to issue the CUP is unconstitutional because it creates a direct conflict between state and federal law, such that state law would be preempted. *Amicus curiae* Cannabis Industry Alliance of Oregon, Inc. submitted argument in support of Juniper, responding only to the county's sixth assignment of error.

[2] In its fourth assignment of error, the county argues that Juniper had waived its argument that the county denied the CUP based on federal law and, thus, LUBA erred in considering it.

## I.  BACKGROUND

Under the Oregon Psilocybin Services Act, ORS 475A.210 to 475A.722, persons licensed by the Oregon Health Authority may provide psilocybin services to persons 21 years of age and older. The act provides that cities or counties "may adopt ordinances that impose reasonable regulations on the operation of businesses located at premises for which a license has been issued" under the act. ORS 475A.530(2). "Reasonable regulations" include reasonable limitations on where a premises for psilocybin services may be located. ORS 475A.530(1)(e). The county has adopted provisions governing the location of psilocybin services centers in the county, including, as relevant here, DCC 18.113.030(D)(7), which authorizes licensed psilocybin services centers in a destination resort, subject to the conditional use criteria in DCC 18.128.015.[3] The burden is on the applicant to demonstrate that the conditional use criteria are satisfied. DCC 22.24.050 (burden of proof for land use proceedings); DCC 18.128.010(A) (providing that standards in DCC, Title 22 apply to a conditional use in DCC, Title 18).

In this case, Juniper sought approval from the county for a CUP and site plan review to establish a psilocybin services center within a destination resort. The resort is private property that is surrounded by federal public land managed by the BLM. The access for the resort crosses that public land and is governed by the BLM ROW. As relevant

---

[3] DCC 18.128.015 provides:

"Except for those conditional uses permitting individual single-unit dwellings, conditional uses shall comply with the following standards in addition to the standards of the zone in which the conditional use is located and any other applicable standards of the chapter:

"A. The site under consideration shall be determined to be suitable for the proposed use based on the following factors:

"1. Site, design, and operating characteristics of the use;

"2. Adequacy of transportation access to the site; and

"3. The natural and physical features of the site, including, but not limited to, general topography, natural hazards, and natural resource values.

"B. The proposed use shall be compatible with existing and projected uses on surrounding properties based on the factors listed in DCC 18.128.015(A).

"C. These standards and any other standards of DCC 18.128 may be met by the imposition of conditions calculated to ensure that the standard will be met."

here, the BLM ROW contains the following terms and conditions:

"a. This grant is issued subject to the holder's compliance with all applicable regulations contained in Title 43 Code of Federal Regulations part 2800.

"* * * * *

"e. Failure of the holder to comply with applicable law or any provision of this right-of-way grant shall constitute grounds for suspension or termination thereof."

After a hearing, the county hearings officer denied Juniper's application for a CUP. The hearings officer first determined that "the BLM ROW is part of the access to the site that must be considered." The hearings officer also found that, if a component of the proposed transportation access—specifically, transporting psilocybin across the BLM ROW—could not be used for that purpose, then the entirety of the transportation access is inadequate. The hearings officer then found and concluded the following as to the conditional use criteria of transportation access:

"I agree with the Applicant that a land use approval is typically not the correct venue for resolving the rights of parties to a specific agreement. But such an exercise is not necessary here. Instead, the Hearings Officer must look to the evidence in the record and make findings based on the preponderance of the evidence in the record to determine if a criterion is satisfied. The evidence in this record is that: (1) use of the BLM ROW requires compliance with federal law; (2) federal law prohibits transportation of psilocybin across federal lands; and (3) the Applicant intends to use transportation access to the site across federal land to transport psilocybin. The Applicant acknowledges that its proposed use is not allowed by the express terms of the BLM ROW. Whether or not BLM ultimately enforces the requirements of the BLM ROW is therefore not relevant; on the face of the documents alone, the Applicant has not established that it can do what it proposes to do. * * *

"Based on the foregoing, I find that the Applicant has not met its burden of demonstrating that the site is suitable for the proposed use pursuant to the transportation access factor of DCC 18.128.015(A)(2)."

Juniper appealed that decision to the Deschutes County Board of Commissioners, which conducted a limited *de novo* hearing of the matter. The county adopted the hearings officer's interpretation of the DCC, determined that Juniper had not met its burden of proof, and denied Juniper's application for the CUP. The county determined as follows:

> "The Board adopts the Hearings Officer's findings regarding suitability of the site as it pertains to transportation access. In this case, the subject property and the entire destination resort is accessed via an easement across Bureau of Land Management (BLM) land. Lisa Clark, Field Manager with the BLM, submitted comments dated July 11, 2024, that state psilocybin cannot be transported across federal land. The Board reviewed additional testimony and arguments that were submitted and upholds the Hearings Officer's denial of the subject application on the basis that DCC 18.128.015(A)(2) has not been satisfied."

Juniper sought review by LUBA, raising four assignments of error: (1) the county "misinterpret[ed] DCC 18.128.015(A)(2) to constitute a mandatory approval standard and further misinterpreted the geographic and subject scope of that provision"; (2) the county "improperly bas[ed] its denial on factually incorrect findings and [the county] lacks legal authority upon remand to interpret a private agreement to clarify the factually incorrect findings"; (3) the county erred "because under the [c]ounty's interpretation of [DCC 18.128.015(A)(2)], adequate transportation access nevertheless exists"; and (4) the county "exceed[ed] its authority to apply federal law to deny the [a]pplication, which exceeds the [c]ounty's discretion and which is prohibited as a matter of law." LUBA addressed Juniper's second, first, and fourth assignments and reversed the county's decision denying Juniper's application for a CUP and directed the county to issue the CUP.

Starting with Juniper's second assignment of error, LUBA determined that two of the county's findings were not supported by substantial evidence. First was the county finding that Juniper "acknowledges that its proposed use is not allowed by the express terms of the BLM ROW." LUBA concluded that the statements made by Juniper "are

not evidence that a reasonable person would find equate to an admission by [Juniper] that the BLM ROW prohibits transportation of psilocybin." Second was the county finding that "on the face of the documents alone, [Juniper] has not established that it can do what it proposes to do." LUBA concluded that the BLM ROW is ambiguous as to what constitutes "applicable law" to the BLM ROW, with regard to psilocybin transport or the federal Controlled Substances Act. As a result, LUBA concluded that "we agree with [Juniper] that the county's finding that the BLM ROW on its face unambiguously prohibits the proposed use is not supported by substantial evidence or substantial reason."

Next, addressing Juniper's first assignment of error, LUBA concluded that the county misconstrued DCC 18.128.015(A)(2) in part. Applying deference to the county's interpretation, LUBA determined that it was plausible in three respects: it is a mandatory approval standard, it permits looking beyond immediate site access to the larger transportation connection, and "access" includes the legal right to cross between public and private property. However, LUBA concluded that the county erred by construing "access" to regulate transportation of psilocybin, because the code definition of "access" refers only to the movement of pedestrians and vehicles, and not to objects transported in the vehicles. LUBA stated that "[w]hether vehicles that access the site contain objects that violate federal law or the BLM ROW is not plausibly governed by DCC 18.128.015(A)(2)[.]"

Finally, addressing Juniper's fourth assignment, LUBA concluded that the county exceeded its authority in denying the application. LUBA concluded that "the county's interpretation of DCC 18.128.015(A)(2) as prohibiting psilocybin transport across federal land constitutes an unreasonable limitation on where a licensed psilocybin business 'may be located,'" in violation of ORS 475A.530. LUBA determined that the county looked beyond the facts of the case to broader questions of access on federal property, and that the county's application of the federal Controlled Substances Act to deny the application was improper because that act is not a land use regulation. Additionally, LUBA rejected

the county's argument that it was not relying on federal law. LUBA stated that "either the county impermissibly applied the federal Controlled Substances Act, based on the interpretations provided by the BLM employees * * *, or the county impermissibly relied on its own interpretation of the BLM ROW grant, which, as we explain above, is ambiguous and disputed."

LUBA concluded:

"The [county] board's only basis for denying the applications relies on an implausible construction of DCC 18.128.015(A)(2) and the federal Controlled Substances Act, which is not a land use standard. The board concluded that all other applicable criteria were satisfied, with conditions. The county has not identified any applicable standards that would require further review. Thus, the 'decision is outside the range of discretion allowed the local government under its comprehensive plan and implementing ordinances' and reversal with an order to approve is the appropriate remedy. ORS 197.835(10)(a)(A)."

The county now seeks judicial review, raising six assignments of error. We address the county's third, fifth, and second assignments below.

## II.   ANALYSIS

A.   *The County's Interpretation of DCC 18.128.015(A)(2)*

We begin with the county's third assignment of error. The county argues that LUBA erred in concluding that the county's interpretation of "access" in DCC 18.128.015(A)(2) was implausible and in substituting its own interpretation.

LUBA may reject the county's interpretation of its own land use regulations only if the county's interpretation is "inconsistent with the express language of" the regulation, "inconsistent with the purpose for" the regulation, "inconsistent with the underlying policy that provides the basis for" the regulation, or it is "contrary to a state statute, land use goal[,] or rule that the [regulation] implements." ORS 197.829(1). We, and LUBA, must defer to the county's interpretation of its regulations, if that interpretation "plausibly accounts for the text and context" of the provision. *Siporen v. City of Medford*, 349 Or 247, 262, 243 P3d 776

(2010). That "a stronger or more logical interpretation exists does not make a local government's interpretation implausible." *Gould v. Deschutes County*, 272 Or App 666, 675, 362 P3d 679 (2015). We determine whether the county's interpretation is plausible using the interpretive principles that ordinarily apply to the construction of ordinances, as provided in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). *See, e.g.*, *Botts Marsh LLC v. City of Wheeler*, 326 Or App 215, 228, 532 P3d 544 (2023).

The regulation at issue here is DCC 18.128.015(A)(2), which provides:

> "Except for those conditional uses permitting individual single-unit dwellings, conditional uses shall comply with the following standards in addition to the standards of the zone in which the conditional use is located and any other applicable standards of the chapter:

> "A.   The site under consideration shall be determined to be suitable for the proposed use based on the following factors:

> "* * * * *

> "2.   Adequacy of transportation access to the site[.]"

In addition, under DCC 18.04.030, "access" is defined as "the right to cross between public and private property allowing pedestrians and vehicles to enter and leave property."

The county interpreted the transportation access criteria, for purposes of Juniper's CUP application for a psilocybin services center, to allow it to consider that the BLM ROW requires compliance with federal law, "federal law prohibits the transportation of psilocybin across federal lands," and that Juniper "intends to use transportation access to the site across federal land to transport psilocybin." LUBA concluded that was an implausible interpretation because the definition of "access" refers only to the movement of pedestrians and vehicles, and not to objects transported in the vehicles. That conclusion was erroneous.[4]

---

[4] To the extent LUBA's analysis was based on its view that the county was interpreting DCC 18.128.015(A)(2) to regulate the transportation of psilocybin, we also reject that analysis because it is not an accurate description of the county's interpretation.

The conditional use provision provides that the factors, including adequacy of transportation access, are to be used to determine whether the site is "suitable for the proposed use." DCC 18.128.015(A). Thus, the adequacy of transportation access to the site must take into account the proposed use at issue—here, a psilocybin services center to which Juniper will transport psilocybin. In addition, the definition of "access" is "the *right* to cross between public and private property allowing pedestrians and vehicles to enter and leave property." DCC 18.04.030 (emphasis added). LUBA narrowed its focus to the use of the words "pedestrians and vehicles" in that definition. However, the focus of the definition itself is on "the *right* to cross between public and private property." The "right" in that definition, in the context of the transportation access criteria, plausibly includes the legal right to use the access for the proposed conditional use, given that DCC 18.128.015(A) requires the county to consider the adequacy of the transportation access in the context of the proposed use. The county's interpretation plausibly accounts for *all* of the express language in the applicable provisions, and LUBA's order was "unlawful in substance" in failing to defer to that interpretation as required under ORS 197.829(1).

B. *County Authority under the Oregon Psilocybin Services Act*

Next, we address the county's fifth assignment of error. The county argues that LUBA erred in concluding that the county's interpretation of DCC 18.128.015(A)(2) was an unreasonable limitation on psilocybin business, under ORS 475A.530.[5] We review LUBA's construction of a statute for legal error, *Roberts v. City of Cannon Beach*, 334 Or App 762, 770, 557 P3d 1143 (2024). We conclude that LUBA

_____

[5] We reject Juniper's argument that the county failed to preserve its fifth assignment of error. We acknowledge that the county's argument includes citations to provisions in the Oregon Psilocybin Services Act that were not presented below to LUBA in responding to Juniper's argument that the county's regulation was unreasonable because it applied federal law. However, preservation is not dependent upon making particular citations. The county did adequately preserve its argument that it was not applying federal law and that the Oregon Psilocybin Services Act allowed the county to consider both the undisputed evidence that psilocybin cannot be legally transported across federal land and the express terms of the BLM ROW.

erred in its construction, primarily on the basis of our above analysis which undercuts LUBA's reasoning.

Under ORS 475A.530(2), "the governing body of a city or county may adopt ordinances that impose reasonable regulations on the operation of businesses located at premises for which a license has been issued under ORS 475A.210 to 475A.722[.]" As relevant here, "[r]easonable regulations" include "[r]easonable limitations on where a premises for which a license may be issued under ORS 475A.210 to 475A.722 may be located." ORS 475A.530(1)(e).

In its order, LUBA concluded that "the county's interpretation of DCC 18.128.015(A)(2) as prohibiting psilocybin transport across federal land constitutes an unreasonable limitation on where a licensed psilocybin business 'may be located.'" LUBA determined that the county looked beyond the facts of the case and either improperly applied the federal Controlled Substances Act to its land use decision, when that act is not a land use regulation, or it improperly relied on its own interpretation of the BLM ROW, which was ambiguous as to what law applied to it.

We conclude that LUBA erred, primarily because LUBA's analysis mischaracterizes the county's interpretation of DCC 18.128.015(A)(2), which we have addressed above. As explained, in the context of Juniper's proposed use, the county interpreted DCC 18.128.015(A)(2) as permitting it to consider the evidence in the record that the BLM ROW requires compliance with federal law, that "federal law prohibits the transportation of psilocybin across federal lands," and that Juniper "intends to use transportation access to the site across federal land to transport psilocybin." The county was not applying the federal Controlled Substances Act to its regulation or interpreting its regulation to prohibit transport of psilocybin across federal land; it was evaluating the CUP application based on the record before it. Juniper's proposed use included transportation of psilocybin to the site and Juniper was relying on the BLM ROW as the means to meet its burden to satisfy the transportation access requirement. The county found, based on the evidence in the record, that psilocybin could not be legally transported across federal land and the face of the BLM ROW did not

expressly *permit* it. As a result, the county denied the CUP based on Juniper's failure to meet its burden to demonstrate that it met the transportation access requirement in DCC 18.128.015(A)(2).

Contrary to LUBA's conclusions, the line of reasoning adopted by the county did not look outside the record, did not apply the federal Controlled Substances Act to its land use decision, and was not based on an interpretation of an ambiguity in the BLM ROW.[6] As a result, we conclude that LUBA's order was "unlawful in substance."

## C.  *LUBA's Application of the Standard of Review*

We next address the county's second assignment of error, in which it asserts that LUBA failed to correctly apply its standard of review in considering the county's denial of the CUP. Specifically, the county argues that (1) LUBA mischaracterized the county's findings that it then determined were not supported by substantial evidence, and (2) "[b]y concluding that [the BLM ROW] is *ambiguous* with respect to whether it may be used to transport psilocybin, LUBA improperly excused [Juniper] from meeting its burden of proving that it did have lawful authority to do so." (Emphasis in original; underline omitted.)

To address the county's argument, we must first determine our standard of review. Ordinarily, when we review LUBA's consideration of whether substantial evidence supports a local government's decision, "[w]e examine whether LUBA has applied the proper substantial-evidence standard of review." *Stevens v. City of Island City*, 260 Or App 768, 772, 324 P3d 477 (2014). However, in addition to applying substantial evidence review to two of the county's findings, LUBA went further in this case. LUBA did not determine only that the county's decision was not supported

---

[6] We note that we may not construe the Oregon Psilocybin Services Act, among other things, "[t]o prohibit a party to a federal contract *** from prohibiting the manufacture, delivery, possession or use of psilocybin products to the extent necessary to comply with the terms and conditions of the contract or to satisfy federal requirements for the contract," "[t]o require a person to violate a federal law," or "[t]o exempt a person from federal law or obstruct the enforcement of a federal law." ORS 475A.215(5), (6), (7). We do not construe how those provisions interact with a construction of what is a reasonable regulation under ORS 475A.530, because it is unnecessary to our disposition in this case.

by substantial evidence and remand for further consideration. Ultimately, LUBA determined that the only decision the county could reach was that Juniper was entitled to the CUP as a matter of law. "In such a situation, LUBA takes up a question of law, and, consequently, in the course of considering whether LUBA's order is 'unlawful in substance,' ORS 197.850(9)(a), we consider whether it 'represents a mistaken application of the applicable law.'" *Roberts*, 334 Or App at 768-69 (quoting *Tylka v. Clackamas County*, 330 Or App 247, 248, 543 P3d 743 (2024)). Here, we conclude that LUBA's order represents a mistaken application of the law, as explained below.

We first address the county's argument that LUBA mischaracterized the two findings of fact that LUBA determined were not supported by substantial evidence. With respect to the county's finding that, "[Juniper] acknowledges that its proposed use is not allowed by the express terms of the BLM ROW," we conclude that LUBA did not mischaracterize that finding or err in its application of the standard of review because the finding was about what Juniper acknowledged. LUBA correctly articulated its substantial evidence standard of review for that finding, and the county has not persuaded us that the evidence in the record is "so at odds" with LUBA's evaluation that we could infer that LUBA misunderstood or misapplied that standard with respect to that finding.

However, we make a different evaluation with respect to the second county finding that, "on the face of the documents alone, [Juniper] has not established that it can do what it proposes to do." LUBA treated that statement as a finding of fact that the BLM ROW unambiguously prohibits the proposed use. Based on that characterization, LUBA then determined that the finding was not supported by substantial evidence or substantial reason because, in its view, the BLM ROW is ambiguous as to whether the federal Controlled Substances Act was applicable law for purposes of that instrument. That was error in two respects.

First, whether a right-of-way grant is ambiguous is not a finding of fact to which substantial evidence review applies; it is a legal question. *See Carroll v. Lane County*, 340

Or App 514, 523, ___ P3d ___ (2025) (holding that LUBA erred in conducting substantial evidence review of a deed, because whether the text of a deed is ambiguous presents a legal question); *see also, e.g.*, *Stone v. CCXL, LLC*, 318 Or App 107, 122, 506 P3d 1167, *rev den*, 370 Or 198 (2022) (determining whether an easement instrument is ambiguous is question of law). LUBA erred in applying substantial evidence review to that issue.

Second, and more importantly, we agree with the county that LUBA mischaracterized the hearings officer's statement. In context, what the hearings officer found was that Juniper had failed to meet its burden to prove that it met the transportation access criteria based on the face of the BLM ROW, which is the document that Juniper was relying on. The hearings officer was not making a factual finding or legal determination about what law was definitively incorporated into the BLM ROW; rather, the officer made the correct legal statement that Juniper had not established that the BLM ROW, on its face, *permitted* Juniper to transport psilocybin across federal land. The officer did not state that that proposed use was *prohibited* by the BLM ROW, as characterized by LUBA. Thus, LUBA erred in improperly applying substantial evidence review to a legal issue and in concluding that the hearings officer's statement was unsupported by the face of the BLM ROW based on a mischaracterization of that statement.

That discussion leads us into the county's next argument with which we also agree. LUBA failed to appropriately consider in its analysis that Juniper bore the burden of proof to demonstrate that the transportation access criteria was satisfied. Because the county and LUBA are not appropriate forums to determine the meaning of an ambiguous contract, it necessarily follows from LUBA's determination that the BLM ROW was ambiguous as to whether the federal Controlled Substances Act was applicable law that governed Juniper's access under the BLM ROW that Juniper could not meet its burden that it satisfied the transportation access criteria in the context of its proposed use based on the BLM ROW alone. LUBA's conclusion that Juniper was entitled to a CUP as a matter of law ignored Juniper's burden

and was based on legally erroneous conclusions. As a result, LUBA's conclusion that Juniper was entitled to the CUP was a "mistaken application of the applicable law." *Roberts*, 334 Or App at 769.

Based on the forgoing, we reverse and remand LUBA's order.

Reversed and remanded.